[Crim. No. 22896. Mar. 22, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
TERRY L. SLAUGHTER, Defendant and Respondent.

**COUNSEL**

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver, Ann K. Jensen, Thomas A. Brady and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Appellant.

John J. Meehan, District Attorney (Alameda), Thomas Orloff and William M. Baldwin, Assistant District Attorneys, as Amici Curiae on behalf of Plaintiff and Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Peter R. Silten, Deputy State Public Defender, for Defendant and Respondent.

**OPINION**

**BROUSSARD, J.**—The People appeal from an order of the superior court denying their motion under Penal Code section 871.5[1] to reinstate a charge

---

[1]All statutory citations are to the Penal Code.

accusing defendant of the murder of Russell Bradstreet. This appeal requires us to determine the standard of review of a magistrate's ruling when that ruling is challenged by a motion for reinstatement under section 871.5, a question of first impression in this court.

The Legislature enacted section 871.5 in 1980 to provide an alternative method for review of a magistrate's decision dismissing a criminal charge. ■ ■■■ Under section 739, the prosecutor could file an information including dismissed charges when the defendant had been held to answer on a transactionally related charge;[2] the defendant could then challenge the information by motion under section 995. (We refer to this form of judicial review as section 739 review.) Section 871.5 provided a new avenue of review—a motion in superior court to reinstate the dismissed charge—applicable whenever there was no transactionally related charge.

■ Under section 739 review, when the magistrate makes express findings of fact, the reviewing court is bound by such findings if supported by substantial evidence. If however, the magistrate renders no findings, the reviewing court may find the dismissal erroneous as a matter of law whenever the evidence provides a rational basis for believing that the defendant is guilty of the offense. ■ As we shall explain, we believe the Legislature adopted the same standard for section 871.5 review when it provided in section 871.5 for motions to reinstate charges erroneously dismissed "as a matter of law" (§ 871.5, subd. (b)). ■ Applying this standard to the present case, we conclude that the superior court erred in denying the People's motion to reinstate the murder charge.

## I.

By complaint filed in August of 1980, defendant Terry L. Slaughter was accused of murder (§ 187) and possession of a concealable firearm by an ex-felon (§ 12021).[3] At his preliminary hearing, the following evidence was presented:

Russell Bradstreet worked as a uniformed security guard and carried a .38 caliber pistol. In the early morning hours of July 22, 1980, Bradstreet

---

[2]Section 739 provides that when an individual has been committed by a magistrate for at least one felony, the information filed in superior court "*may charge the defendant with either the offense or offenses named in the [magistrate's] order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed.*" (Italics added.) However, this section only permits the charging of dismissed offenses which are transactionally related to counts named in the commitment order. (*Parks* v. *Superior Court* (1952) 38 Cal.2d 609 [241 P.2d 521].)

[3]The complaint also included enhancement allegations that are irrelevant to this appeal.

was on duty in a marked security car, parked so as to be available to respond to calls for security service. At some time prior to 5 a.m., Bradstreet was killed by a .22 caliber bullet that entered the back of his neck.

Sergeant Michael Sitterud of the Oakland Police Department's homicide detail arrived at the scene at 5:15 a.m. Bradstreet's security car was parked at a vacant gas station on the corner of 73d Avenue and East 14th Street in Oakland. The driver's door was open, and the window rolled down. Bradstreet's body lay half in and half out of the car. His pistol and wallet were missing. The car's radio was on, and a hand microphone that connected to the radio was lying on the pavement by the body. The window of the passenger door had a bullet hole through it, and glass fragments were scattered on the ground nearby. Sergeant Sitterud concluded that the hole had resulted from a shot fired from the direction of a five-foot high cinder block wall which separated the gas station from a residence. There was no indication that either the home or the station had been burglarized.

Twelve days later, on August 3, defendant was arrested near Santa Barbara. He was driving southbound on Highway 101 in a stolen car. Bradstreet's pistol was discovered under the right front seat of this car.

Sergeant Sitterud interrogated defendant about the Bradstreet homicide the following day. Defendant talked freely, and the questioning was repeated on tape. The tape recording was admitted into evidence at the preliminary hearing.

In his recorded statement, defendant said that he came from Venice, California, to the Oakland home of his cousin about two weeks before the homicide. He met Edward Forward and they began doing "four or five a night burglaries." Forward would generally drive his car to the Oakland hills, select the homes to be burglarized, and then carry out the entries himself, leaving defendant in the car as lookout. Defendant said that he feared Forward and felt he had little choice but to cooperate in the burglaries.

In the early morning of July 22, Forward drove defendant to a home on 73d Avenue "that we were supposedly going to burglarize." Forward parked at the curb, "got out of the car, went to the trunk of the car, got something out of the trunk of his car, and went along the side of a house." Defendant was acting as lookout "like I normally do." He did not follow Forward's movements because "I know what he was going to do, what I thought he was going to do, I thought he was going to do a burglary. . . . And that's what I thought he was doing, going to the side of the house to check it out."

A short while later, defendant heard "a couple of shots—maybe three, I'm not sure—but I heard a couple of shots." He thought "somebody had shot at [Forward], you know, from him checking out the window or something." Then Forward "came running back from the side of the house to the back of the car, threw something in the trunk, slammed it down, got in the car, and sped toward [the apartment he shared with defendant's cousin]." Forward seemed "panicky like" but never would talk about the shots. He did not show defendant any wallet or identification. Defendant learned about the shooting from news broadcasts later that day.

About a week after the homicide, Forward showed defendant a snubnosed .38 pistol. He did not talk much about the gun, he "just told me that the gun was hot and that it came from a dead man." Defendant admitted that he and Forward "did some burglaries" after July 22, although defendant stated he did so out of fear.

On August 2d, Forward threatened defendant. Defendant then telephoned his mother in Venice in an attempt to obtain a ticket out of Oakland. When this failed, he stole Forward's car late at night and headed south. When the car broke down, defendant abandoned it and stole another. He transferred to the stolen car not only his own belongings but also some of Forward's property from the trunk, including fur coats and a .38 pistol. Defendant drove this second car until he was stopped and arrested south of Santa Barbara.

In the course of his statement to Sergeant Sitterud, defendant indicated he had seen a .22 caliber rifle, another pistol, and considerable stolen property in the apartment where Forward was living. Subsequently, Sitterud obtained a search warrant for the premises. The execution of the search warrant at Forward's apartment turned up a pistol and most of the stolen property that defendant had mentioned. In addition, the police found "parts of the .22 rifle [defendant] had talked about."

After hearing all the evidence, the magistrate held defendant to answer for the weapon offense (§ 12021) but refused to bind him over for murder. The magistrate stated, "I think any murder liability would be a vicarious liability as pointed out in [defense counsel's] memorandum, but even that is stretching too far. I do not see where there could be a holding order on the [murder] charge."

The information filed in superior court alleged only a violation of section 12021, but the prosecutor also filed a "Motion to Compel Reinstatement of Complaint" pursuant to section 871.5. This recently enacted statute permits

the prosecution, under specified circumstances,[4] to "make a motion in the superior court . . . to compel the magistrate to reinstate [a dismissed] complaint or a portion thereof . . . ." (§ 871.5, subd. (a).) The statute provides that the "superior court shall hear and determine the motion on the basis of the record of the proceedings before the magistrate" and that "[t]he only ground for the motion shall be that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof." (*Id.*, subds. (c) and (b).)

In his motion to compel reinstatement of the murder charge against defendant, the prosecutor in the present case contended that section 871.5 should be interpreted similarly to section 739, so as to permit reinstatement whenever there exists a reasonable interpretation of the evidence which would support the charge. The prosecutor noted that defendant had confessed to conspiring with Forward to commit burglary; he argued that the evidence was reasonably susceptible of the view that Forward killed Bradstreet while attempting to perpetrate that burglary, in which case Forward would be guilty of murder under the felony-murder rule (§ 189), and defendant would be liable as an accomplice (see *People* v. *Medina* (1974) 41 Cal.App.3d 438, 452 [116 Cal.Rptr. 133], and cases there cited). The superior court nevertheless denied the motion to compel reinstatement, and the prosecution appealed.

## II.

We begin by reviewing the settled principles defining the role of the committing magistrate and the scope of judicial review of a magistrate's dismissal order under section 739. Section 872 provides that if "it appears from the [preliminary] examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, the magistrate must make or indorse on the complaint an order" holding the defendant to answer for the offense. ■ "The term 'sufficient cause' is generally equivalent to 'reasonable and probable cause,' that is, such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511

---

[4]Currently, a section 871.5 reinstatement motion is authorized "[w]hen an action [has been] dismissed by a magistrate pursuant to Section 859b, 861, 871, 1008, 1381, 1381.5, 1385, 1387, or 1389, or a portion thereof [has been] dismissed pursuant to those same sections which may not be charged by information under the provisions of Section 739 . . . ." (§ 871.5, subd. (a).)

In the present case, the murder charge against defendant was dismissed pursuant to section 871, and the prosecutor determined that the charge could not be refiled pursuant to section 739 because it was not transactionally related to the weapon offense for which respondent was held to answer.

P.2d 609]; see *Williams* v. *Superior Court* (1969) 71 Cal.2d 1144, 1147 [80 Cal.Rptr. 747, 458 P.2d 987]; *People* v. *Hampton* (1981) 116 Cal.App.3d 193, 200 [172 Cal.Rptr. 25].)

■ Thus the burden on the prosecution before the magistrate is quite distinct from that necessary to obtain a conviction before a judge or jury. "Of course, the probable cause test is not identical with the test which controls a jury . . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, 'Evidence that will justify a prosecution need not be sufficient to support a conviction . . . . ■ *An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.* [Citations.]' " (*Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131]; *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; italics added.)

■ "Within the framework of his limited role, . . . the magistrate may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses. [Citation.] In other words, in assisting him in his determination of 'sufficient cause,' the magistrate is entitled to perform adjudicatory functions akin to the functions of a trial judge. Yet the proceeding is not a trial, and if the magistrate forms a personal opinion regarding the guilt or innocence of the accused, that opinion is of no legal significance whatever in view of the limited nature of the proceedings." (*People* v. *Uhlemann, supra,* 9 Cal.3d 662, 667, fn. omitted.)

In short, the magistrate is not a trier of fact. He does not decide whether defendant committed the crime, but only whether there is " 'some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' " (*People* v. *Orin* (1975) 13 Cal.3d 937, 947 [120 Cal.Rptr. 65, 533 P.2d 193].) If the record shows strong and credible evidence of defendant's guilt, the magistrate may reasonably assume the possibility of his guilt. Thus in many cases he will not find it necessary to resolve all conflicts in the evidence, in order to find probable cause to hold the defendant for trial. The magistrate's power to decide factual disputes exists to assist him in his determination of sufficient cause (*People* v. *Uhl-*

*emann, supra,* 9 Cal.3d 662, 667); if he can determine that issue without resolving factual conflicts, he may do so.[5]

■ The character of judicial review under section 739 depends on whether the magistrate has exercised his power to render findings of fact. If he has made findings, those findings are conclusive if supported by substantial evidence. *(People* v. *Salzman* (1982) 131 Cal.App.3d 676, 684 [182 Cal.Rptr. 748]; see *Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 667 [94 Cal.Rptr. 289, 483 P.2d 1241]; *De Mond* v. *Superior Court* (1962) 57 Cal.2d 340, 345 [19 Cal.Rptr. 313, 368 P.2d 865].) If he has not rendered findings, however, the reviewing court cannot assume that he has resolved factual disputes or passed upon the credibility of witnesses. A dismissal unsupported by findings therefore receives the independent scrutiny appropriate for review of questions of law. The cases arising under section 739 explain this distinction.

In *Jones* v. *Superior Court, supra,* 4 Cal.3d 660, the magistrate found that the victim consented to intercourse with the defendants, and reduced the charge from forcible rape to statutory rape. We held that the prosecution could not include a count of forcible rape in the information. We explained: "[H]ad the magistrate herein found that Miss H. did *not* consent to intercourse with petitioners, *or made no finding on that issue,* the district attorney might properly have disputed the magistrate's characterization of the offense involved as 'statutory' rape, and included in the information a count for nonconsensual rape. However, since the magistrate found, as a matter of fact, that Miss H. consented to intercourse and that no acts of oral copulation or sodomy occurred, it follows that those offenses were not shown by the evidence to have been committed . . . and should not have been included in the information." (P. 666.) (Second italics added.)

[5]Defendant suggests that this view of the magistrate's role is inconsistent with *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 587 [150 Cal.Rptr. 435, 586 P.2d 916], in which we held a defendant indicted by grand jury has the right to a preliminary hearing, and *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 880 [59 Cal.Rptr. 440, 428 P.2d 304], which held that at a preliminary hearing a defendant has the right to cross-examine prosecution witnesses and present defense witnesses. We find no inconsistency. None of the benefits to defendant of a preliminary hearing set forth in *Hawkins* require that a magistrate resolve factual conflicts unnecessary to a determination of probable cause. *Jennings* can be reconciled with our later decisions in *People* v. *Uhlemann, supra,* 9 Cal.3d 662 and *People* v. *Orin, supra,* 13 Cal.3d 937, 947, on the basis that defendant's cross-examination and affirmative evidence bears upon the question whether the record shows a reasonable basis to suspect defendant's guilt. Prosecution evidence which before cross-examination may seem to raise a reasonable suspicion may well, after the defense has finished, be seen as too insubstantial to justify holding defendant for trial. Thus *Jennings* held that denial of the right to cross-examine and to call witnesses is prejudicial error. It did not hold that whenever the defense contests the prosecution case, the magistrate must back away from the standard of reasonable suspicion of guilt and decide as a question of fact what crimes, if any, the defendant committed.

In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the magistrate dismissed a count charging defendant with setting a fire at Lewin's Furniture Store, stating that the evidence was "too weak" because it failed to show motive. (P. 457.) The prosecutor filed an information which included the dismissed count, and defendant was convicted on the charge. On appeal, we stated that "[i]f the magistrate had found *as a matter of fact* that defendant had not started the Lewin's fire, the district attorney might well have been bound by his determination. [Citing *Jones* v. *Superior Court, supra,* 4 Cal.3d 600.] The district attorney, however, need not accept the magistrate's legal conclusion." (Pp. 457-458.) Since the magistrate made no express findings, we did not inquire whether substantial evidence might support a finding, but instead held that "the magistrate's ruling as to the Lewin's count was patently *erroneous as a matter of law. . . .*" (P. 458, italics added.)

In *Pizano* v. *Superior Court* (1978) 21 Cal.3d 128 [145 Cal.Rptr. 524, 577 P.2d 659], the victim of a robbery was killed when Pizano's codefendant used the victim as a shield from gunfire. The magistrate dismissed the murder charge against defendant on the ground that the prosecution had failed to prove malice. Our opinion noted that "an offense not named in the commitment order may not be added to the information if the magistrate made *factual findings* which are fatal to the asserted conclusion that the offense was committed. . . . When, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches the ultimate *legal conclusion* that it does not provide probable cause . . ., such conclusion is open to challenge by adding the offense to the information." (P. 133.) We then held that the magistrate's determination "was a legal conclusion, not a finding of fact as that term is used in *Jones.* Therefore, the People were entitled to challenge his action by recharging the murder count." (Pp. 133-134.)

Finally in *People* v. *Farley* (1971) 19 Cal.App.3d 215 [96 Cal.Rptr. 478], the magistrate dismissed two counts charging sale of marijuana and LSD, saying that " 'after the hearsay is stricken, the evidence that goes to those is insufficient.' " (P. 219.) The prosecution nevertheless included those counts in the information. Affirming defendant's conviction, the Court of Appeal emphasized that "the magistrate did not make factual findings" (p. 221), and concluded that his ruling finding lack of probable cause was in error (pp. 221-222).

In summary, cases arising under section 739 recognize a clear distinction: findings of fact must be sustained if supported by substantial evidence, but a finding of lack of probable cause, unsupported by any factual findings, is reviewed as an issue of law. Absent controlling factual findings, if the mag-

istrate dismisses a charge when the evidence provides a rational ground for believing that defendant is guilty of the offense, his ruling is erroneous *as a matter of law,* and will not be sustained by the reviewing court.

 The question before us in the present case is whether section 871.5 envisions the same standard of review, or, as defendant claims, contemplates a more limited review under which the magistrate's dismissal order must be sustained if supported by any reasonable view of the evidence. The section itself expresses no standard of review, but implies one by providing that the prosecutor can move to reinstate a dismissed charge only on the ground that it was "as a matter of law, . . . erroneously dismissed." (§ 871.5, subd. (b).)

This is familiar language. It is in fact the very language used by the courts to describe section 739 review. (See *People* v. *Beagle, supra,* 6 Cal.3d 441, 458.) It clearly distinguishes between review of findings of fact under a substantial evidence test and review of conclusions drawn from an uncontroverted record as questions of law.[6]

 "It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them." (*Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200 [288 P.2d 12], fn. omitted; *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; see *Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; *Favalora* v. *County of Humboldt* (1976) 55 Cal.App.3d 969, 973 [127 Cal.Rptr. 907].) This principle leads us to presume that the 1980 Legislature, when it enacted section 871.5, was aware both of the standard of review employed by courts under section 739, and the language by which the courts described that standard. We conclude that the Legislature, in referring to error "as a matter of law," did not intend to enact a new and different standard, but to incorporate the section 739 standard for review of dismissal orders.

This conclusion comports with the purpose of section 871.5. In enacting this section, the Legislature established a new method of reviewing a magistrate's ruling as an alternative to section 739 review. The choice between

---

[6]Defendant cites *People* v. *Salzman, supra,* 131 Cal.App.3d 676, the only case to discuss the standard of review under section 871.5. *Salzman* involved a review of a dismissal following a section 1538.5 suppression hearing in which the magistrate made express findings of fact. The *Salzman* court tested such findings by substantial evidence review, and upheld the ruling. Nothing in the case suggests any distinction between review under section 871.5 and section 739.

these alternatives depends upon whether the magistrate found probable cause to hold the defendant on a transactionally related offense—a factor irrelevant to the purpose of judicial review under either section. Adoption of a stricter standard of review for section 871.5 would serve no purpose we can discern, and by denying the People an adequate remedy to review a dismissal in cases without a transactionally related crime, would undermine the balance of fairness which formed the basis for the Legislative act.[7]

In fact under the standard proposed by defendant—that the reviewing court must sustain a dismissal if supported by any reasonable factual ground even if the magistrate has made no findings—the People could avoid the risk of arbitrary dismissal only by presenting evidence sufficient to negate any and all reasonable inferences of innocence. This is an imposing burden, and one entirely inconsistent with the established doctrine that the People need only show " 'some rational ground for assuming the possibility' " of defendant's guilt (*People* v. *Orin, supra,* 13 Cal.3d 937, 947). Indeed an evidentiary record sufficient to negate all reasonable inferences of innocence would suffice to prove guilt beyond a reasonable doubt. This clearly is not the appropriate burden of proof at the preliminary hearing.

Defendant contends that the standard of review he proposes is the logical consequence of cases, such as *Jones* v. *Superior Court, supra,* 4 Cal.3d 660, which permit the magistrate to exercise an adjudicatory function. If this reasoning were sound—and it is not—it would apply equally to cases arising under section 739. After all, a defendant is entitled to the magistrate's independent determination of sufficient cause even if there exists some transactionally related offense. In our opinion the cases in question hold only that when the magistrate exercises his adjudicatory function and renders findings of fact, the reviewing court must respect this determination when it is supported by substantial evidence. But when the magistrate does not render findings of fact, the reviewing court should not have to search the record to see if it can conceive of some rational finding or factual inference which might support the magistrate's ruling, and then search it again to see if substantial evidence supports this finding or inference.[8]

---

[7]As described in *Vlick* v. *Superior Court* (1982) 128 Cal.App.3d 992, 999 [180 Cal.Rptr. 742]: "Having allowed the magistrate to dismiss a felony complaint which dismissal serves as an effective bar to further prosecution, the Legislature provided a means by which the People could obtain immediate review of the magistrate's dismissal if it was based on an issue of law . . . . This procedure is fair to both the defendant and the People in that defendant is relieved from repeated filings and the People are afforded an avenue for overturning the magistrate's dismissals erroneous as a matter of law."

[8]Defendant also points to the legislative history of the 1982 amendments to section 871.5. Those amendments, introduced as Senate Bill No. 1743 by Senator Holmdahl on March 11, 1982, retained language providing for a reinstatement motion on the ground that "as a matter of law, the magistrate erroneously dismissed the action or a portion thereof." Senator Holm-

In conclusion, neither the language, the legislative history, nor the purpose of section 871.5 requires us to adopt the standard of review proposed by the defendant. To the contrary, each support the proposition that the Legislature intended the same standard of review under both sections 871.5 and 739: a decision of the magistrate dismissing charges, absent findings of fact, is erroneous as a matter of law if the evidentiary record discloses a rational basis for believing the defendant guilty of the charged crime.

## III.

There remains the matter of applying this standard in the present case. This does not present a difficult problem. The record presents no conflicts in the evidence and the magistrate rendered no findings of fact. He merely stated briefly that "any murder liability would be a vicarious liability . . ., but even that is stretching too far. I do not see where there should be a holding order on the 187 charge."

This language is not very different from that used by the magistrates in *Beagle* and *Farley*. In the former case the magistrate dismissed a charge because the evidence was "too weak" (see 6 Cal.3d 441, 457); in the latter because the evidence was "insufficient" (see 19 Cal.App.3d 215, 221). In

dahl proposed to add additional language to the section which, among many other things, would have amended subdivision (c) to read as follows: "The superior court shall hear and determine the motion on the basis of the record of the proceedings before the magistrate, *and, if the matter proceeded to preliminary examination and was discharged for any reason after proofs were heard, shall order reinstated any offense of which any reasonable construction of the evidence adduced at the hearing admits, and shall order the magistrate to issue an order of commitment as to the offenses reinstated. If the matter was dismissed for any reason before the preliminary hearing was completed, the superior court shall order reinstated any offense or offenses dismissed because of an error of law. In either case, the superior court shall rule without attempting to reconcile conflicts or judge the credibility of the witnesses. In either case none but express findings of fact by the magistrate shall affect the superior court's review of the evidence.* If the motion is litigated to decision by the prosecutor, the prosecution is prohibited from refiling the dismissed action, or portion thereof." (Italics in original, to indicate proposed changes in the statute.) The bill was revised extensively and frequently during its journey through the Legislature, and the italicized language does not appear in the final version.

The italicized language is a complete and exact exposition of the standard of review employed by courts under section 739. If it had been proposed but rejected as a substitute for language restricting review to error as a matter of law, the defendant could reasonably argue that "matter of law" implied a different and narrower standard. But when the language appears in successive paragraphs of the same version of the bill, a different conclusion is warranted. Apparently the author of the bill saw no inconsistency between review limited to error as a matter of law, and section 739 review. The language of the bill made it clear that if the prosecutor moved for reinstatement on the ground that the magistrate erred as a matter of law, the superior court should grant that motion if any reasonable construction of the evidence would support the charges. In this setting, the subsequent elimination of the italicized language does not prove the Legislature intended to reject the section 739 standard of review; it may have simply eliminated an unnecessary detailed exposition of that standard.

section 739 cases the courts view such language as raising issues of law. (See *Beagle,* 6 Cal.3d at p. 458; *Farley,* 19 Cal.App.3d at pp. 221-222.)

In accord with the section 739 precedents, we review the magistrate's order in this case as raising an issue of law: whether the evidentiary record contained facts sufficient to show sufficient cause to hold defendant for murder. The record here shows without dispute that defendant and Forward conspired to commit a burglary, that a security guard was robbed and killed near the site of the burglary, and that defendant acquired possession of the guard's gun. Even giving full credit to defendant's statement, it shows only that Forward, not defendant, actually killed the guard, and that defendant may not know the reason or circumstances of the killing. The reasonable inference remains that Forward killed the guard in perpetration of the burglary which he and defendant planned. ■ It is clear that, in the language of *People* v. *Uhlemann,* there exists "such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (9 Cal.3d 662, 667.) On such a record "the committing magistrate *must* hold the defendant to answer" (*People* v. *Orin, supra,* 13 Cal.3d 937, 947); failure to do so constitutes error "as a matter of law" (*People* v. *Beagle, supra,* 6 Cal.3d 441, 458).

The order denying the motion to reinstate that portion of the complaint charging defendant with murder is reversed.

Mosk, J., Kaus, J., Grodin, J., and Richardson, J.,* concurred.

**BIRD, C. J.**—I respectfully dissent.

## I.

The principal question raised in this appeal is whether Penal Code section 871.5[1] should be construed in similar fashion to section 739, i.e., to permit reinstatement of any charge dismissed by a magistrate, so long as the record reflects at least one view of the preliminary hearing evidence which would have supported a finding of probable cause as to that charge. The clear language of section 871.5 requires a negative answer to this question; reinstatement is authorized only when no substantial evidence supports the magistrate's dismissal.[2] This plain meaning of the statute is also supported by

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1]All statutory references in this opinion are to the Penal Code unless otherwise indicated.

[2]Reinstatement would also be warranted if the magistrate erred in ruling on a purely legal issue. Since there is no contention that the magistrate in this case committed such error, the point is not discussed at length in this opinion.

legislative history, case law, and the overall statutory and constitutional system of which section 871.5 is a part.

It is important to consider the constitutional and statutory context into which section 871.5 was enacted. The California Constitution requires felonies to "be prosecuted by law, either by indictment or, after examination and commitment by a magistrate, by information." (Art. I, § 14.) In light of this provision and its predecessor,[3] the courts have long recognized that "the Constitution protects a person from prosecution in the absence of a prior determination by either a magistrate or a grand jury that such action is justified." (*Parks* v. *Superior Court* (1952) 38 Cal.2d 609, 611 [241 P.2d 521]; see also *People* v. *Bird* (1931) 212 Cal. 632, 643 [300 P. 23].)

Penal Code sections 858 through 883 implement the "examination and commitment" provision of the Constitution. Most pertinent to the present case are sections 860, 871, and 872. These statutes require a magistrate to conduct a preliminary examination (§ 860) and to determine, "after hearing the proofs" (§ 871), whether "a public offense has been committed" and whether "there is sufficient cause to believe the defendant guilty thereof . . . ." (§ 872, subd. (a); see also § 871.)[4] "[T]he burden is on the prosecution to produce evidence that there is a reasonable probability, enough to induce a strong suspicion in the mind of a man of ordinary caution or prudence, that a crime has been committed, and that defendant is guilty." (*Garabedian* v. *Superior Court* (1963) 59 Cal.2d 124, 126-127 [28 Cal.Rptr. 318, 378 P.2d 590].)

Prior to 1978, it was generally believed there were four possible resolutions of a felony proceeding before a magistrate. The magistrate could (1) hold the accused to answer on all offenses charged, following a preliminary examination (§ 872) or a waiver of preliminary examination (§ 860); (2) hold the accused to answer on some, but not all, of the charged offenses, "after hearing the proofs" at the preliminary examination (§§ 871, 872); (3) dismiss the complaint in its entirety, "after hearing the proofs," for lack of sufficient cause (§ 871); or (4) dismiss the complaint or a portion thereof on a constitutional or statutory ground, prior to "hearing the proofs." (See, e.g., §§ 859b, 861).[5]

---

[3]Section 14 of article I replaced former section 8 as part of the constitutional revision of 1974. The new provision "represents a streamlined version" of its predecessor and was "not intended to introduce substantive changes . . . ." (*Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 594, fn. 9 [150 Cal.Rptr. 435, 586 P.2d 916].)

[4]The term "sufficient cause" in sections 871 and 872 is generally equivalent to "reasonable and probable cause." (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609].)

[5]There was (and still exists) another possible outcome which is irrelevant to this case. If the accused pleaded guilty or nolo contendere to felony charges, the magistrate would "certify the case . . . to the superior court" for sentencing proceedings. (§ 859a.)

Under this system, if the prosecutor were dissatisfied with a magistrate's dismissal of felony charges or an entire complaint, the option was available to refile the dismissed charges in a subsequent complaint or to seek a grand jury indictment. (See *People* v. *Uhlemann, supra,* 9 Cal.3d at p. 666.) Moreover, the prosecutor could *directly* challenge the magistrate's dismissal, but this power was limited to one particular situation. Section 739 permitted the prosecutor to file an information in the superior court and charge not only "the offense or offenses named in the [magistrate's] order of commitment," but also "any offense or offenses shown by the evidence taken before the magistrate to have been committed."[6] As long as the accused was held to answer for at least one felony offense, the prosecutor appeared to have the authority to charge in the superior court "any offense or offenses shown by the evidence," even if those offenses had been dismissed by the magistrate and were factually unrelated to any offense on which there had been a commitment.

However, the courts realized that such "a literal construction of section 739 would bring it into conflict with the constitutional mandate which 'protects a person from prosecution in the absence of a prior determination by either a magistrate or a grand jury that such action is justified.' [Citations.]"[7] (*Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664 [94 Cal.Rptr. 289, 483 P.2d 1241].) The prosecutor's authority under section 739 to charge in the superior court an offense not named in the magistrate's commitment order was limited to situations where "(1) the evidence before the magistrate shows that such offense was committed (Pen. Code, § 739), and (2) that the offense 'arose out of the transaction which was the basis for the commitment' on a related offense. [Citations.]" (*Jones, supra,* 4 Cal.3d at pp. 664-665.)

---

[6]Section 739 provides in relevant part that when an individual has been committed by a magistrate for at least one felony, the information filed in superior court "*may charge the defendant with* either the offense or offenses named in the [magistrate's] order of commitment or *any offense or offenses shown by the evidence taken before the magistrate* to have been committed." (Italics added.)

[7]The constitutional conflict would arise if the prosecutor attempted to charge in the information any dismissed offense that was not transactionally related to counts for which there had been a commitment ordered by the magistrate. As this court explained in *Parks* v. *Superior Court, supra,* 38 Cal.2d at pages 612-613, "[i]t may not be contended that where a single transaction or course of conduct is involved in the preliminary hearing the district attorney has power to file an information after the petitioner has been discharged by the magistrate because of a showing that no public offense has been committed. Such a procedure would be contrary to the protection afforded by the constitutional provision and is not within the permissive powers under the code section. Those powers depend on the issuance of an order of commitment. No exception to this dependence may be made because of the circumstance that the defendant in the same proceeding was charged and heard on two separate, unrelated and unconnected transactions. As indicated in [*People* v. *Bird, supra,* 212 Cal. 632] the constitutional provision would be nullified if by this device the district attorney might proceed without first having obtained an order of commitment."

In 1978, this court decided *People* v. *Peters* (1978) 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651]. *Peters* held that a magistrate could not employ section 1385 to dismiss a felony charge.[8] The underlying premise of *Peters*—that a "magistrate" was not a "court" within the meaning of the statute—suggested that a magistrate had little authority, if any, to dismiss a felony charge, except when acting "after hearing the proofs" pursuant to section 871. However, *Peters* did not appear to affect the magistrate's power to dismiss under section 871, and it neither expanded nor contracted the prosecutor's power to directly challenge a magistrate's dismissal of a felony pursuant to section 739.

The *Peters* ruling, drastically limiting the magistrate's power to dismiss for legal cause other than the insufficiency of the evidence, "created problems which . . . subsequently beset prosecutors, defendants and courts" alike. (*Carraway* v. *Superior Court* (1981) 118 Cal.App.3d 150, 152 [172 Cal.Rptr. 453].) The Legislature soon responded.

In 1980, after an earlier bill had been vetoed by the Governor,[9] the Legislature passed, and the Governor signed, "a comprehensive revision of . . . numerous statutory provisions delineating a magistrate's power to dismiss." (*Ramos* v. *Superior Court* (1982) 32 Cal.3d 26, 30 [184 Cal.Rptr. 622, 648 P.2d 589]; see Stats. 1980, ch. 938, pp. 2965-2968.)[10] As this court has

---

[8]At that time, section 1385 provided: "The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading." (As amended by Stats. 1951, ch. 1674, § 141, p. 3857. See *post*, fn. 10.)

[9]Senate Bill No. 1476 (1977-1978 Reg. Sess.).

[10]In *Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 5-6, footnote 4 [177 Cal.Rptr. 325, 634 P.2d 352], this court summarized the 1980 legislation as follows:

"The legislative amendments made five related sets of changes in the Penal Code. First, sections 1384, 1385 and 1387, which had formerly authorized dismissals in certain situations by the 'court,' were amended to explicitly authorize such dismissals by a 'judge or magistrate.' (Stats. 1980, ch. 938, §§ 6-8, [p. 2968].) Second, the rule that two dismissals bar further prosecution on a felony charge was expanded to include dismissals pursuant to sections 859b, 861, 871 and 995, as well as sections 1381-1388. (*Id.*, § 8, at [p. 2968].) Third, section 871, which formerly authorized the magistrate to 'discharge' a defendant after hearing proofs which are insufficient, was amended to authorize discharge of the defendant *and* dismissal of the complaint. (*Id.*, § 3, at [p. 2966].) Fourth, the 10-day time limit of section 859b and the requirement in section 861 that a preliminary examination be held at one court session were both amended to compel the magistrate to dismiss the complaint and discharge the defendant if either section is violated, except in certain narrow situations. (*Id.*, §§ 1-2, at [pp. 2965-2966].) The amendments to both sections provide that if the district attorney shows good cause, an in-custody defendant's preliminary hearing can be held outside the time limits—but the defendant must be released from custody on his own recognizance, unless he is charged with a capital case in which the proof is evident and the presumption great. (*Ibid.*) Finally, the amendments add a new section to the Penal Code, section 871.5, providing a means by which the district attorney can appeal a magistrate's order to dismiss an action pursuant to sections 859b, 861, 871, or 1385. (*Id.*, § 4, at [pp. 2966-2967].)"

recognized, the principal purpose of the 1980 revision was to establish clearly that a magistrate, as well as a judge, has broad power to order a dismissal that serves as an effective bar to further prosecution. (*Ramos, supra,* 32 Cal.3d at p. 30.) In essence, the 1980 legislation overturned the *Peters* decision.[11]

In addition, the Legislature found it appropriate to grant the prosecution greater rights to directly challenge dismissals by magistrates. This was accomplished not by amending section 739—which was left unchanged—but by enacting a new statute (§ 871.5) which created an entirely different form of review of dismissals by magistrates.[12] (Stats. 1980, ch. 938, § 4, p. 2966.) It is this provision which is at issue here.

Section 871.5 permits the prosecution, under specified circumstances, to appeal a magistrate's dismissal by "mak[ing] a motion in the superior court . . . to compel the magistrate to reinstate the complaint or a portion thereof and to reinstate the custodial status of the defendant under the same terms and conditions as when the defendant last appeared before the magistrate." (*Id.,* subd. (a).) The issue presented here involves the standard to be used by the superior court in ruling on section 871.5 reinstatement motions.

The literal words of the statute provide the appropriate starting point for analysis. Indeed, if the statutory language is clear and unambiguous, "there is no need for construction, and courts should not indulge in it." (*Solberg v. Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

As originally enacted in 1980, section 871.5 provided that "the ground" for a reinstatement motion shall be that "as a matter of law, the magistrate erroneously dismissed the action or a portion thereof." (Stats. 1980, ch.

---

[11]Subsequently, the *Peters* decision was also overruled by this court. (*Landrum* v. *Superior Court, supra,* 30 Cal.3d 1, 14.)

[12]Since the prosecution already had the power to challenge dismissals in situations covered by section 739 and since that section was not altered by the 1980 legislation, it appears likely that the Legislature originally intended section 871.5 to apply primarily, but not exclusively, to dismissals where section 739 could not be invoked. (See *Ramos* v. *Superior Court, supra,* 32 Cal.3d at p. 35.)

However, a recent amendment to section 871.5 specifies that the reinstatement authorized by section 871.5 applies to dismissed charges "which may not be charged by information under the provisions of Section 739 . . . ." (Stats. 1982, ch. 671, § 1, p. 2740. See *post,* fn. 13.)

In this case, the dismissed homicide charge may not be charged under section 739, since the prosecution has conceded that the homicide charge against respondent was not transactionally related·to the weapon offense on which he was held to answer. (See *Ondarza* v. *Superior Court* (1980) 106 Cal.App.3d 195, 203 [164 Cal.Rptr. 892].) Indeed, the superior court judge wondered "how the [Alameda County magistrate] had jurisdiction to hold [respondent] to answer for a 12021 committed in Santa Barbara County."

938, § 4, p. 2966.) An amendment enacted the following year emphasized that this shall be the *"only* ground" for reinstatement. (Stats. 1981, ch. 854, § 3, p. 3278, italics added.) No other change has been made to that portion of the statute.[13]

The words chosen by the Legislature to describe the exclusive "ground" for reinstatement—i.e., that the dismissal be erroneous "as a matter of law"—convey a well-established meaning in our legal system. This meaning is especially familiar in an appellate context, and reviewing courts rely on it daily. However, these words have almost no significance, and are almost never heard, in common parlance.

Since the Legislature has employed the words in the very setting where they are routinely used—appellate review of a lower court's ruling—the conclusion is inescapable that the Legislature used these words in their accepted legal sense. "It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use those exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts." (*City of Long Beach* v. *Payne* (1935) 3 Cal.2d 184, 191 [44 P.2d 305].)

The meaning of the legal concept of error "as a matter of law" is not open to debate. Indeed, it is the standard most frequently employed throughout our legal system in reviewing the decisions of lower courts. As Witkin has noted, "[t]he function of an appellate court is to review *errors of law* and not to pass on questions of fact." (6 Witkin, Cal. Procedure (2d ed. 1971) pt. I., Appeal, § 209, p. 4200.) However, "[i]f there is no substantial evidence to support the judgment, it is erroneous as a matter of law." (*Ibid.*)

"[I]n examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to estab-

---

[13]In addition to the 1981 amendment just mentioned, section 871.5 has been amended by the Legislature on four other occasions. However, only one of these is relevant here. (Stats. 1982, ch. 671, pp. 2740-2741.)

These 1982 amendments made three substantive changes to section 871.5. Initially, the Legislature enlarged the coverage of section 871.5, by permitting reinstatement motions to challenge dismissals by magistrates acting pursuant to section 1008, 1381, 1381.5, 1387, or 1389, in addition to the sections originally set forth (§§ 859b, 861, 871, 1385). (Stats. 1982, ch. 671, § 1, p. 2740.) Second, insofar as section 871.5 authorized appeals from a magistrate's dismissal of a "portion" of a complaint, this authority was specified to be directed at those portions "which may not be charged by information under the provisions of Section 739 . . . ." (*Ibid.* See *ante,* fn. 6.) Finally, the Legislature added the provisions for a defendant to "waive his or her right to be committed by a magistrate" if the superior court has "order[ed] the magistrate to issue an order of commitment . . . ." (*Ibid.*)

lish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." (*Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157].) "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

This must be the standard which the Legislature plainly invoked when it specified as the "only ground" for reinstatement under section 871.5 that "as a matter of law, the magistrate erroneously dismissed the action or a portion thereof." The words of the statute are clear and unambiguous. No other reading of the statute is possible.

Thus, a dismissed felony complaint (or portion thereof) may be reinstated under section 871.5 only if the magistrate erred in ruling on a material issue of law[14] or if, as a factual matter, there exists no reasonable construction of the evidence before the magistrate which can support the dismissal.[15]

The prosecution argues that section 871.5 should be construed like section 739, i.e., to permit reinstatement of any dismissed felony charge so long as *any* seemingly reasonable interpretation of the evidence supports the charge. However, this interpretation of section 871.5 cannot be reconciled with the clear language of the statute. Therefore, there is no need for creative statutory construction, "and courts should not indulge in it." (*Solberg* v. *Superior Court, supra,* 19 Cal.3d at p. 198.)

However, even if this court were to search beyond the words of the statute for further evidence of legislative intent, the same conclusion would be reached. The courts' interpretation of section 739—which the prosecution seeks to impose on section 871.5—flows easily and naturally from the language of the statute itself. Section 739 explicitly permits the district attorney to file an information in superior court charging not only those offenses for which the magistrate held the accused to answer but also for "*any* offense or offenses *shown by the evidence* taken before the magistrate . . . ." (Italics added.) The broadly permissive wording of section 739 stands in vivid contrast to the stricter language of section 871.5, which permits challenges to a magistrate's dismissal *only* if the dismissal was erroneous "as a matter of law."

---

[14]See *In re Torres* (1982) 128 Cal.App.3d 826, 829 [180 Cal.Rptr. 700]. (See *ante,* fn. 2.)

[15]See *People* v. *Salzman* (1982) 131 Cal.App.3d 676, 684-686 [182 Cal.Rptr. 748]. (See *post,* pp. 650-651.)

From the use of the rather expansive language found in section 739, it is readily apparent that the Legislature knows how to phrase an enactment when it wants to adopt a broadly permissive standard for overturning magistrates' rulings. The far narrower language of section 871.5—indeed, the use of words of art with the opposite meaning—indicates convincingly that no such broad meaning was intended here.

Moreover, the interpretation which the prosecution seeks to impose on section 871.5 was specifically rejected by the Legislature when it substantively revised the statute in 1982. (Stats. 1982, ch. 671, § 1, p. 2740. See *ante,* fn. 13.) As introduced in the Senate, the bill to amend section 871.5 proposed that language be added so that the first sentence of subdivision (c) would read: "The superior court shall hear and determine the [reinstatement] motion on the basis of the record of the proceedings before the magistrate, and, if the matter proceeded to preliminary examination and was discharged for any reason after proofs were heard, *shall order reinstated any offense of which any reasonable construction of the evidence adduced at the hearing admits,* and shall order the magistrate to issue an order of commitment as to the offenses reinstated." (Sen. Bill No. 1743, p. 2, original italics deleted except as noted.)

However, this language was deleted by the Senate on May 12, 1982, and when the Legislature subsequently enacted Senate Bill No. 1743 into law, this subdivision was left unchanged. Although these events took place after the superior court proceedings currently under scrutiny, they suggest that section 871.5 did not previously, and still does not, have the meaning which the prosecution ascribes to it. (See also *post,* fn. 17.)

Additionally, the prosecution's interpretation of section 871.5 is inconsistent with the few Court of Appeal decisions construing this statute. Of particular relevance is *People* v. *Salzman, supra,* 131 Cal.App.3d 676, 684-686. There, a magistrate granted a suppression motion pursuant to section 1538.5 and dismissed the complaint. The prosecution sought to challenge the magistrate's action by filing a section 871.5 reinstatement motion in the superior court. The reinstatement motion was denied, and the prosecution appealed.

The Court of Appeal upheld the denial of the reinstatement motion. The court specifically held that the normal "rules of appellate review also apply to motions to reinstate a complaint under section 871.5. Hence, the power to judge the credibility of witnesses, to resolve conflicts, to weigh the evidence, and to draw factual inferences was vested in the magistrate hearing the motion to suppress at the preliminary examination. On review under section 871.5, the superior court is bound by the magistrate's findings if

they are *supported by substantial evidence.*" (131 Cal.App.3d at p. 684, italics added.)[16]

It is true that *Salzman* involved review of a dismissal based on the granting of a legal motion rather than (as in the present case) a finding of insufficient cause to hold to answer. Nevertheless, nothing in the language of section 871.5 would permit a distinction to be drawn between such dismissals. The statute provides one standard to be applied in ruling on all reinstatement motions, i.e., that the magistrate erroneously dismissed as a matter of law. There is nothing suggesting that factual matters are to be treated differently, depending upon the basis for the dismissal.[17]

There is a final reason why section 871.5 cannot be construed as the prosecution suggests. Their interpretation—i.e., that the Legislature used the normally narrow words "as a matter of law" to endow prosecutors with wide-ranging power to overturn a magistrate's dismissal—is highly improbable in view of the Legislature's deference to the powers conferred on a magistrate by article I, section 14, of the Constitution. This constitutional provision mandates that felony offenses be prosecuted by indictment or, "after examination and commitment by a magistrate," by information. Two interrelated lines of cases have explored the meaning of the "examination and commitment" requirement.

First, this court explicitly held more than 30 years ago that no felony offense could be prosecuted by information unless a magistrate had ordered a commitment for a transactionally related offense. (*Parks* v. *Superior Court, supra,* 38 Cal.2d 609.) Finding that "the Constitution protects a person from prosecution in the absence of a prior determination by either a

---

[16]The court then observed that "it is the duty of the superior court, and ours as well, to measure those facts, as found by the magistrate, against the constitutional standard [of] reasonableness. The constitutional issue is solely a question of law and if the magistrate mistakenly concluded that a search was unconstitutional that conclusion is also erroneous 'as a matter of law.'" (*Ibid.*)

The court held reinstatement was not justified because, under the facts of the case, the magistrate's ruling on the motion to suppress was "supported by substantial evidence." (*Id.,* at p. 685.)

[17]The timing of *Salzman* adds to the significance of the Legislature's deletion of the proposed language from Senate Bill No. 1743, discussed earlier.

As introduced in the Senate on March 12, 1982, Senate Bill No. 1743 contained the language which would have incorporated the prosecution's position into section 871.5. *Salzman* was decided on April 21. It contained the broad language quoted in the text of this opinion, to the effect that "[o]n review under section 871.5, the superior court is bound by the magistrate's findings if they are supported by substantial evidence." (131 Cal.App.3d at p. 684.)

The language of the bill was obviously inconsistent with the *Salzman* holding. Three weeks after *Salzman,* this language was deleted from the bill. This chain of events undercuts any possible argument that the statutory language was deleted as superfluous.

magistrate or a grand jury that such action is justified," the court ruled that the power to prosecute by information "depend[s] on the issuance of an order of commitment" for a transactionally related offense.[18] (*Parks, supra,* 38 Cal.2d at pp. 611, 612. See *ante,* fn. 7.)

The second line of cases makes clear that the requirement of "examination and commitment by a magistrate" would not be satisfied by a pro forma proceeding at which the magistrate is compelled to accept the prosecution's evidence at its maximum theoretical value. Rather, the phrase " 'commitment by a magistrate' means by the discretion of the magistrate who presides at the preliminary [hearing]." (*Chism* v. *Superior Court* (1981) 123 Cal.App.3d 1053, 1060 [176 Cal.Rptr. 909]; see *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 126 [95 Cal.Rptr. 524, 485 P.2d 1140].)

Thus, the magistrate "acts as an independent arbiter of the issues presented by the adversaries"[19] and "is entitled to perform adjudicatory functions akin to the functions of a trial judge."[20] These functions include weighing evidence, resolving conflicts, drawing factual inferences, and giving or withholding credence to the witnesses. (*Jones* v. *Superior Court, supra,* 4 Cal.3d at p. 667; *People* v. *Salzman, supra,* 131 Cal.App.3d at p. 684.) Each of these functions involves "a question of fact within the province of the committing magistrate to determine and neither the superior court nor an appellate court may substitute its judgment as to such question for that of the magistrate."[21] (See *DeMond* v. *Superior Court* (1962) 57 Cal.2d 340, 345 [19 Cal.Rptr. 313, 368 P.2d 865]. Accord, *Jones, supra,* 4 Cal.3d at p. 667.)

---

[18]Under *Parks,* a dismissed charge, even if transactionally related to an offense for which there has been a holding, could not be charged in the information unless "the evidence before the magistrate shows that such offense was committed." (See *Jones* v. *Superior Court, supra,* 4 Cal.3d at pp. 664-665.)

Cases subsequent to *Parks* have explained what is meant by this further requirement. It is now clear that if a magistrate made factual findings that are fatal to a determination of probable cause as to the dismissed charge, the charge cannot be deemed to be "shown by the evidence to have been committed" and hence cannot be included in the information pursuant to section 739. (*Jones* v. *Superior Court, supra,* 4 Cal.3d at p. 666.) Other cases have made clear that such factual findings by the magistrate need not be express, so long as their existence can clearly be implied from the record. (See *Walker* v. *Superior Court* (1980) 107 Cal.App.3d 884, 890 [166 Cal.Rptr. 209].)

[19]*Esteybar* v. *Municipal Court, supra,* 5 Cal.3d at page 127.

[20]*People* v. *Uhlemann, supra,* 9 Cal.3d at page 667.

[21]Consequently, this court has held on several occasions that a magistrate has the power to take a view of the evidence favorable to the accused even though a contrary finding would also have been supported by the record. (See, e.g., *Jones* v. *Superior Court, supra,* 4 Cal.3d 660; *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304].)

The same point has also been implied or stated in dictum in, e.g., *People* v. *Beagle* (1972) 6 Cal.3d 441, 457-458 [99 Cal.Rptr. 313, 492 P.2d 1], and *People* v. *McGee* (1947) 31 Cal.2d 229, 233-234 [187 P.2d 706].

Taken together, the *Parks* rule prohibiting prosecution by information in the absence of a magistrate's commitment, and the cases which explain that a magistrate must be permitted to exercise adjudicatory functions in making that commitment, lead ineluctably to one conclusion. A magistrate may not be compelled to issue an order of commitment that is inconsistent with his or her reasonable view of the evidence. Any other result would "reduce [the magistrate's] function to an ex parte act and render meaningless the magistrate's independent determination." (*Esteybar* v. *Municipal Court, supra,* 5 Cal.3d at p. 127.)

Of course, these constitutional limitations on prosecution by information do not forbid the inclusion of a dismissed felony in an information under the circumstances contemplated by section 739, i.e., where the magistrate has ordered a commitment on a related offense. The dismissed offense may be charged in the information when, as is frequently the case, the magistrate has exercised his or her adjudicatory functions, decided to accept the prosecution's evidence, but has drawn an incorrect legal conclusion as to what offenses the evidence shows. (See *People* v. *Bird, supra,* 212 Cal. 632.)[22]

However, the statute at issue here (§ 871.5) is intended to permit the reinstatement of charges in situations in which no related commitment was ordered by the magistrate. (See *ante,* fn. 12.) In this context, the cases explaining the magistrate's powers under article I, section 14, are fully relevant. Moreover, it is clear that the Legislature is aware of these constitutional principles. For example, the remedy provided for an erroneous dismissal was not to permit the filing of an information without a magistrate's commitment (as is authorized in § 739 situations) but to order the resumption of proceedings before the magistrate (see § 871.5, subds. (e) and (g) and final ¶).

In light of the Legislature's recognition of the scope of the magistrate's "examination and commitment" powers, it is highly significant that the Legislature has permitted a dismissed offense to be reinstated "*only*" when the magistrate has erred "as a matter of law." It is not plausible that the deliberate choice of such well recognized words of limitation were intended to endow the prosecution with far-reaching authority to overrule a magistrate's dismissal. When the Legislature desires to create such authority, it knows how to make its intentions clear. (Cf. § 739 and proposed 1982

---

[22]The constitutional limitations on prosecution by information would not forbid reinstatement pursuant to section 871.5 when the magistrate erred in ruling on a purely legal issue or when substantial evidence is lacking to support the magistrate's ruling. Both of these scenarios involve errors of law, and independent review by a higher court would not impinge on the constitutionally derived adjudicatory functions of the magistrate.

amend. to § 871.5, subd. (c), discussed *ante,* at p. 650.) No such intention remotely appears in the context, language or history of section 871.5.

## II.

Even if section 871.5 may not be used to reinstate a charge when the magistrate's dismissal is supported by a reasonable view of the evidence, a significant question remains: Is there a reasonable view of the preliminary hearing evidence in the present case which justifies this magistrate's refusal to hold respondent to answer for murder? If the evidence is viewed in the light most favorable to the magistrate's ruling and there still is no basis for the ruling, reinstatement would be required no matter how section 871.5 were interpreted.

## *A*

The prosecution primarily seeks to hold respondent criminally liable for Bradstreet's death on a theory of first degree burglary-murder. As this court recently recognized, this form of felony murder is "a creature of statute." (*People* v. *Dillon* (1983) 34 Cal.3d 441, 450, 463 [194 Cal.Rptr. 390, 668 P.2d 697].) It is codified in section 189, which defines first degree murder as, inter alia, "[a]ll murder . . . which is committed in the perpetration of, or attempt to perpetrate," certain felonies (including burglary).

However, it has long been recognized that the felony-murder doctrine is "a highly artificial concept," one which "anachronistically resurrects from a bygone age a 'barbaric' concept that has been discarded in the place of its origin." (*People* v. *Phillips* (1966) 64 Cal.2d 574, 582, 583, fn. 6 [51 Cal.Rptr. 225, 414 P.2d 353].) The rule "not only 'erodes the relation between criminal liability and moral culpability' but also is usually unnecessary for conviction . . . ." (*People* v. *Satchell* (1971) 6 Cal.3d 28, 33 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383].)

Consequently, the felony-murder rule is a disfavored doctrine, and the prior decisions of this court "make it clear we hold no brief for the . . . rule."[23] In deciding whether felony-murder principles are applicable in various specific factual settings, the court has consistently "sought to insure that the . . . doctrine be given the narrowest possible application consistent with its ostensible purpose . . . ." (*People* v. *Satchell, supra,* 6 Cal.3d at p. 34.)

For example, it is not sufficient that a death has occurred within the time frame and at the location of the underlying crime. To invoke the felony-

---

[23]*People* v. *Dillon, supra,* 34 Cal.3d at page 462.

murder rule—or its counterpart, the misdemeanor-manslaughter rule—two other requirements relevant to the present case must be satisfied. First, "[t]here must be a causal relationship between the unlawful act and the death." (*People* v. *Butts* (1965) 236 Cal.App.2d 817, 837 [46 Cal.Rptr. 362]; see also *People* v. *Kerrick* (1927) 86 Cal.App. 542, 548-549 [261 P. 756].) In addition—but generally closely related to the first—the "death must result from an act committed *in furtherance of* the [underlying crime] or the escape from such [crime]." (*People* v. *Schader* (1965) 62 Cal.2d 716, 731 [44 Cal.Rptr. 193, 401 P.2d 665], overruled on another point in *People* v. *Satchell, supra,* 6 Cal.3d 28, italics added.)

These two principles have been invoked in a variety of factual contexts to limit or preclude application of the felony-murder and misdemeanor-manslaughter rules. One line of cases, commencing with *People* v. *Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130], forbids a homicide conviction to be premised on the felony-murder doctrine when "the immediate cause of death is the act of the victim or [a responding police] officer" or any person other than the felons. (*People* v. *Antick* (1975) 15 Cal.3d 79, 88 [123 Cal.Rptr. 475, 539 P.2d 43]; see also *Pizano* v. *Superior Court* (1978) 21 Cal.3d 128, 136 [145 Cal.Rptr. 524, 577 P.2d 659].)[24] "It is not enough," this court has explained, "that the killing was a risk reasonably to be foreseen and that the [underlying crime] might therefore be regarded as a proximate cause of the killing. Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed *to perpetrate the felony.*" (*Washington, supra,* 62 Cal.2d at p. 781, italics added.) Therefore, "for a defendant to be guilty of murder under the felony-murder rule the act of killing must be committed by the defendant or his accomplice *acting in furtherance of their common design.*" (*Id.,* at p. 783, italics added.)

*Washington* and its progeny are not the only felony-murder cases to rely on the requirement that the killing be committed by a felon "in furtherance of" the felony or common design. For more than five decades, it has been the settled law of this state that if an accomplice to a conspiracy to commit arson accidentally burns himself to death, his coconspirator may not be convicted of felony murder. (*People* v. *Ferlin* (1928) 203 Cal. 587, 595-597 [265 P. 230].) "*Ferlin,* and the cases which follow it, clearly express the rule that the accomplice's accidental self-destruction is not *in furtherance of the common design.*" (*People* v. *Earnest* (1975) 46 Cal.App.3d 792, 796 [120 Cal.Rptr. 485], italics added.)

---

[24]However, a murder conviction may be possible in such situations under principles of implied malice and vicarious liability. (See *People* v. *Antick, supra,* 15 Cal.3d at pp. 87-92.)

Somewhat closer to the facts of the present case is *People* v. *Schader, supra,* 62 Cal.2d 716. Schader was convicted of first degree felony murder for personally shooting a police officer while a codefendant attempted to flee from a grocery store robbery. Schader admitted he and his partner had conspired to rob the store. He testified, however, that the crime was supposed to occur later in the evening and that he was therefore unaware of the commission of the crime at the time he shot the officer. He requested the trial judge to instruct the jury that if they believed his testimony, he would not be guilty of first degree felony murder. The judge refused to give the instruction, and Schader attacked this ruling on appeal.

Although this court recognized that the killing occurred during the commission of a robbery for which Schader was liable as an aider and abettor (62 Cal.2d at p. 731), it nevertheless refused to permit the felony-murder rule to be applied to Schader's version of the events. (*Id.,* at pp. 731-732.) If Schader were unaware of the actual commission of the agreed-upon robbery, his act of shooting the officer was not "committed in furtherance of the robbery or the escape from such robbery." (*Id.,* at p. 731.) "The killing was not committed in the perpetration of the robbery, just as it would not have been so committed if Schader had killed . . . for a purpose personal to himself . . . ." (*Id.,* at p. 732.)

As further support for the proposition that the felony-murder doctrine applies only to killings committed "in furtherance of" or "to perpetrate" the underlying felony, it is appropriate to look to the interpretation of the analogous misdemeanor-manslaughter rule. (§ 192, subd. 2.[25]) It has long been settled that a misdemeanor-manslaughter conviction must be based on a killing committed in furtherance of the common design. (See *People* v. *Kerrick, supra,* 86 Cal.App. 542, 549-550.)

In *Kerrick, supra,* several individuals were convicted of manslaughter as the result of a shooting death during what the jury could have found to be a riot, a rout, or an unlawful assembly. The jury was instructed in such a way as "would make all [defendants] guilty if they were participating in an unlawful act, regardless of their knowledge or participation in the design of the [defendant who personally committed the killing]." (*Id.,* at p. 548.)

The *Kerrick* court held the instructions to be erroneous for failing to inform the jury that " ' "Even if the common design is unlawful, and if one member of the party departs from the original design as agreed upon by all

---

[25]Penal Code section 192 provides in pertinent part, "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds:

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"2. Involuntary—in the commission of an unlawful act, not amounting to felony . . . ."

of the members, and does an act which was not only not contemplated by those who entered into the common purpose, but was not in furtherance thereof, and not the natural or legitimate consequence of anything connected therewith, the person guilty of such act, if it was itself unlawful, would alone be responsible therefor.""'" (*Id.*, at p. 550.)

The evidence elicited at the preliminary hearing in this case readily supports the interpretation that Forward's shooting of Bradstreet was not done "in furtherance of" or "to perpetrate" a burglary.[26] Viewing this evidence in the light most favorable to the magistrate's ruling, there is ample justification for the conclusion that Forward acted "for a purpose personal to himself"[27] and that his attack on Bradstreet was "'"a fresh and independent product of [his own] mind . . . outside of, or foreign to, the common design."'"[28]

The central thrust of respondent's statement to Sergeant Sitterud is that he and Forward were burglars, not armed robbers. Prior to July 22, they had committed numerous household burglaries, but no robberies of any sort. Accordingly, respondent believed that what he and Forward were about to commit that night was "simply" another household burglary of the type they had been committing.

When Forward parked in front of the house next to the gas station, respondent was unarmed, as was Forward. Although he became aware that Forward thereafter removed something from the trunk, respondent did not see what it was. Respondent knew what Forward had been planning—an unarmed burglary. Nothing in what Forward appeared to do was inconsistent with this plan.[29] Thus, respondent kept his eye out for police, "like I

---

[26]Neither at the trial court level nor on appeal has the prosecution argued that respondent is criminally liable for Bradstreet's death under a *robbery*-murder theory. It is evident that respondent did not aid Forward while harboring the specific intent or purpose of facilitating the commission of a *robbery*. (See *People* v. *Beeman* (1984) *ante* pp. 547, 561 [199 Cal.Rptr. 60, 674 P.2d 1318].)

[27]*People* v. *Schader, supra,* 62 Cal.2d at page 732.

[28]*People* v. *Kerrick, supra,* 86 Cal.App. at page 550.

[29]It is suggested that respondent should have known Forward armed himself that night. This is said to flow from respondent's statements that he knew Forward kept a weapon in the trunk and that he was aware Forward retrieved "something" from the trunk before approaching the house.

However, it should be remembered that the question is whether, as a matter of law, the magistrate had no choice but to conclude that respondent knew Forward armed himself. While the inference which the prosecution seeks to draw might be tenable as a matter of abstract logic, it cannot be said to be the *only* inference that can be drawn.

Nor is it necessarily the most logical inference. It cannot be said that the trunk contained only a gun, or that Forward would have no use for any item other than a gun. The superior court stated it well: "[I]t does not follow that the defendant 'was aware that the man went

normally do." A five-foot high, solid concrete wall separated the home to be burglarized from the adjacent gas station. As a result, respondent could not see that there was a vehicle parked at the station.

There is no direct evidence as to what occurred immediately after Forward disappeared into the darkness between the house and the wall. It appears likely that when Forward saw Bradstreet seated in his vehicle, he decided, for reasons personal to himself, to shoot and rob Bradstreet. Forward fired two shots from behind the protection of the wall, ran to the security vehicle, took Bradstreet's wallet and gun, and fled. Forward refused to talk about what had occurred. He did not share the proceeds of his robbery with respondent but kept everything for himself.

In this scenario, Forward did not act "in furtherance of" or "to perpetrate" the burglary. He did not shoot Bradstreet in order to carry out, avoid detection of, or escape from the scene of the burglary attempt. Rather, in the words of the prosecutor below, Forward "changed his mind, gave up the burglary and decided to go rob the security guard."

It is contended, however, that there exists another, assertedly "more likely," interpretation of the evidence. Relying on the testimony which suggested that Bradstreet's radio was on and the hand microphone unhooked when he was shot, the prosecution suggests that Bradstreet had detected the burglary attempt and was calling in on his radio to report it. Under this interpretation, Forward must have become aware of Bradstreet's actions and shot him in order to avoid detection by the police.

This interpretation of the preliminary hearing evidence may well be an arguable one. However, the contention that it is the "more likely" interpretation is unavailing for reasons both legal and factual.

Initially, section 871.5 permits reinstatement only when "*as a matter of law,* the magistrate erroneously dismissed the action." (*Id.,* subd. (b).) Thus, it is not sufficient for the prosecution to show that there exists one

---

and got a gun.' . . . He said all he knows is that he went to the back of the trunk.

"Now, [respondent] knew that [Forward] had guns. Now, I submit if somebody is going to burglarize a house and you are there as a look-out, it is not unknown to my experience with burglars that they have some type of a tool which assists them in getting through windows. Sometimes it is called a 'jimmy.'

"And so the fact that the guy goes and opens the trunk of the car and then slams the trunk of the car and goes away, and he says, 'No, I don't see what if anything he had,' . . . does not necessarily or inevitably or strongly suggest per se that at the time that he said his crime partner was going around, going to the trunk to go around and case the house to burglarize, is saying, 'I knew he went to the trunk and got whatever type of weapon was used as a result of which the security guard got killed.'"

interpretation of the evidence which appears reasonable to a reviewing court and which could have been a basis for the magistrate to hold the accused to answer.[30] A magistrate can be said to have erred "as a matter of law" only if *all* reasonable inferences would require a bindover. Even the prosecution has not seriously contended that such is the situation here.

In any event, the preliminary hearing evidence suggests the prosecution's interpretation is not the "more likely" one. The fact that Bradstreet's radio was on and the hand microphone unhooked is not especially significant, since the precise purpose for his being assigned to that location was to await radio calls from the transit company. Moreover, the height of the concrete wall and its distance from the security vehicle suggest that it would have been difficult to detect suspicious events on the other side.

More importantly, if Bradstreet were in fact attempting to report suspicious behavior beyond the wall, it seems highly unlikely that he would have left his driver's window rolled down while he operated his radio[31] and also turned his back toward the source of potential danger.[32] Moreover, if Forward's act of shooting Bradstreet were motivated by concerns that Bradstreet was in the process of reporting the burglary, it appears unlikely that Forward would want to linger in the area after the shooting. He would not have stayed long enough to climb over the wall, remove valuables from the body, and return to his own car. It is evident that Forward shot Bradstreet in order to rob him, since immediately thereafter he did so. The prosecution's hypothesis that Bradstreet was shot to avoid police detection of the burglary is less likely on this record.

In summary, a reasonable view of the preliminary hearing evidence fully justifies the magistrate's conclusion that the killing by Forward was not committed "in furtherance of" or "to perpetrate" a burglary attempt.

*B*

Alternatively, it is suggested that the magistrate was required to find respondent criminally liable for Bradstreet's death under an aiding-and-abet-

---

[30]When several interpretations of evidence appear reasonable to a reviewing court, it is often impossible for that court to state with confidence from a cold record which interpretation actually is the "more reasonable." Factors that can be extremely probative in making this determination are often unavailable to judges reviewing transcripts. (See, e.g., *Meiner* v. *Ford Motor Co.* (1971) 17 Cal.App.3d 127, 140-141 [94 Cal.Rptr. 702].) This is a principal reason why the choice among reasonable interpretations is normally the exclusive function of the tribunal hearing live testimony.

[31]The driver's door was open when Sergeant Sitterud arrived on the scene. However, it cannot be determined whether the door was also open at the time of the shooting. Indeed, Sitterud testified that he could make no determination in that regard.

[32]Bradstreet was found shot in the back of the neck. The bullets had been fired from the direction of the wall. (Cf., maj. opn., *ante,* p. 634.)

ting theory.[33] The prosecution seeks to invoke the doctrine that an aider and abettor is responsible for the natural and probable consequences of the crimes he knowingly and intentionally aids and encourages. (See *People* v. *Durham* (1969) 70 Cal.2d 171, 181, 184 [74 Cal.Rptr. 262, 449 P.2d 198], cert. den. 395 U.S. 968 [23 L.Ed.2d 755, 89 S.Ct. 2116]; see also *People* v. *Beeman, supra, ante,* at p. 560.)

The basic principles of law are not in dispute. An aider and abettor may be convicted of some crimes which he did not specifically contemplate, but "only to the extent of his knowledge or of the natural and reasonable consequences of the acts [knowingly and intentionally] aided and encouraged by him." (*People* v. *Beltran* (1949) 94 Cal.App.2d 197, 207 [210 P.2d 238]; see *People* v. *Beeman, supra, ante,* at p. 560.)

"[O]ne is not liable who has counseled [or intentionally aided] a particular criminal act, and the perpetrator has committed a different one not falling within the probable consequences of that advised [or aided] . . . ." (*People* v. *King* (1938) 30 Cal.App.2d 185, 203 [85 P.2d 928]; see also *People* v. *Butts, supra,* 236 Cal.App.2d 817, 835-837.) A perpetrator's act is not a probable consequence of the specific criminal enterprise aided or encouraged if that act is "'a fresh and independent product of the mind of [the perpetrator], outside of, or foreign to, the common design . . . .'" (See *People* v. *Durham, supra,* 70 Cal.2d at p. 183, quoting *People* v. *Kauffman* (1907) 152 Cal. 331, 335 [92 P. 861].)

Under the facts of this case, it is difficult to see how resolution of this issue can differ from that of the felony-murder question previously discussed. If reinstatement of the murder charge cannot be compelled under a felony-murder theory because the evidence supports the view that the killing was not in the furtherance of the burglary attempt, it would seem to follow that the evidence also permits the conclusion that the killing was "the fresh and independent product" of Forward's mind "outside of, and foreign to, the common design."

In any event, the principles expressed in the aiding-and-abetting decisions of our courts would clearly justify a reasonable magistrate in concluding that the killing by Forward was not a natural and probable consequence of the burglary plan which respondent intended to (and did) aid and abet.

---

[33] "[T]he question of whether a person is an aider and abettor in the commission of a crime is one of fact." (*People* v. *Conely* (1975) 48 Cal.App.3d 805, 808 [123 Cal.Rptr. 252].) In this respect, it is similar to the issue of whether a killing was committed "in furtherance of" the burglary attempt and involves a "factual determination of the committing magistrate." (See *ibid.*)

"The character of the plan is of great importance." (*People* v. *King, supra,* 30 Cal.App.2d at p. 200.) What respondent intended to perpetrate was an unarmed household burglary. He did not know that Forward would depart from the plan and from their prior pattern, arm himself after leaving the car, and shoot and rob a person who had nothing to do with the home to be burglarized. Nor did respondent become aware of Forward's unanticipated actions as they occurred. While at some point Forward altered his plans concerning the burglary, respondent "was not answerable for his co-defendant['s] knowledge, but only for his own." (*People* v. *Littleton* (1972) 25 Cal.App.3d 96, 102 [101 Cal.Rptr. 489].) The unrelated, deliberate shooting by Forward was not a natural and probable consequence of what respondent had good reason to believe was an unarmed burglary.

Although it involved the question of the sufficiency of the evidence to support a conviction at trial rather than a dismissal at a preliminary hearing, the decision in *People* v. *Butts, supra,* 236 Cal.App.2d 817, is instructive. There, two defendants became embroiled in what began as a fistfight with a group of strangers. Each defendant apparently fought with different members of the group. At some point, one defendant (Otwell) pulled out a knife and stabbed his opponents, killing one. Both defendants were convicted of homicide in connection with this death. The liability of the second defendant (Butts) was premised on, inter alia, an aiding-and-abetting theory.

On appeal, the court held the evidence was insufficient to support Butts' conviction under this theory of liability. (236 Cal.App.2d at pp. 835-837.) The court observed there was no evidence that Butts "advised and encouraged use of a knife" or "had advance knowledge of Otwell's wrongful purpose to use a knife" or "shared Otwell's criminal intent to resort to a dangerous weapon." (*Id.,* at p. 836.) The evidence showed "Butts' awareness of participation in a fist fight, not a knife fight." (*Id.,* at p. 837.) This was insufficient to justify a conviction for the consequences of the knife fight. (*Ibid.*)

At a minimum, the *Butts* decision indicates that participation by one defendant in what is thought to be an unarmed crime does not necessarily permit liability to be imposed when a codefendant unexpectedly decides to use a deadly weapon. In this respect, *Butts* lends considerable support to the magistrate's decision here to dismiss the murder charge against respondent. As in *Butts,* there is no evidence that respondent "advised and encouraged" Forward's use of a weapon or "had advance knowledge of [Forward's] wrongful purpose" to use a weapon or "shared [Forward's] criminal intent to resort to a dangerous weapon" or that he even saw the weapon on the night in question.

Thus, the prosecution's alternative claim that the magistrate had no choice but to hold respondent to answer for murder on an aiding-and-abetting theory must be rejected.

### III.

In enacting a standard for the reinstatement of charges dismissed by a magistrate in situations where section 739 does not apply, the Legislature chose to employ words of art that convey a well-established meaning in the appellate review context. Reinstatement is permitted under section 871.5 only when the magistrate's dismissal is erroneous "as a matter of law." Under this standard, a magistrate's dismissal may be overturned only if no substantial evidence supports it.

This reading of section 871.5 not only is compelled by the plain words of the statute itself, but is consistent with the legislative history of the section and with the Court of Appeal decisions construing those words. Moreover, it is the only interpretation of the statute which conforms to the prior decisions of this court, permitting a magistrate to draw factual conclusions favorable to the accused even when a contrary interpretation would also be possible. (See, e.g., *Jones* v. *Superior Court, supra,* 4 Cal.3d 660, 666-668; *Jennings* v. *Superior Court, supra,* 66 Cal.2d 867.)

Since there is substantial evidence to support the magistrate's dismissal of the murder charge in the present case, the superior court's order denying reinstatement of that charge should be affirmed.

Reynoso, J., concurred.