Filed 9/20/22 P. v. Torrez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B316187 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA060732) |
| v. | |
| ARMANDO TORREZ, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Michael Terrell, Judge. Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Armando Torrez, convicted in 2009 of first degree murder with felony-murder special-circumstance findings, appeals the order denying his petition for resentencing pursuant to Penal Code former section 1170.95 (now section 1172.6)[1] following an evidentiary hearing at which the superior court, acting as independent fact finder, found beyond a reasonable doubt Torrez was one of the actual killers of Jose Carrillo and, as such, was guilty of murder under the law as of January 1, 2019 and ineligible for resentencing relief. Torrez contends he was entitled under the federal and California Constitutions to a jury determination whether he is legally culpable for murder under Penal Code sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437) at a trial at which all constitutionally required evidentiary rules, including the right to confront and cross-examine witnesses, are observed. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Torrez's Conviction and Appeal*

Torrez, Itzel Gutierrez, Erika Rodriguez and Anthony Hernandez were jointly charged in an information filed June 12, 2008 with the special-circumstance murder of Carrillo (§§ 187, subd. (a), 190.2, subd. (a)(17)), first degree residential robbery while acting in concert (§ 211, 213, subd. (a)(1)(A)) and conspiracy to commit robbery (§ 182, subd. (a)(1)).

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

Undesignated statutory references are to the Penal Code.

According to the trial testimony of Rodriguez, who had pleaded guilty to second degree murder, Gutierrez conspired with Rodriguez, Torrez and Hernandez to rob Carrillo, Gutierrez's stepfather.[2]  Gutierrez lured Carrillo to a motel room on the pretext of having arranged a liaison with a prostitute.  Torrez told Rodriguez the men were going to rob Carrillo and "put him out long enough to rob him" by choking him.  When Rodriguez expressed her reluctance to participate in the plan, Torrez threatened her, warning he would "fuck [her] up himself" if she did not go through with it.

Initially Rodriguez went to Carrillo's room.  Then Torrez and Hernandez gained entry.  Once inside the room, Hernandez began beating Carrillo and placed him in a chokehold.  The men forced Carrillo to the ground, where Torrez held him down using his knee and arms, while the beating continued.  According to Rodriguez, she told Torrez to stop the beating when Carrillo was no longer resisting, but Torrez continued to hit their victim.  Hernandez then handed Rodriguez some of Carrillo's belongings and told her to leave the room, which she did.

Rodriguez subsequently reunited with Torrez and Hernandez, who were in Carrillo's truck.  The same day Torrez used Carrillo's bank card to purchase gas and to withdraw cash.

Carrillo's body was discovered several days later, lying on the floor against a wall, hogtied to a chair with bedsheets.  The

---

[2]     Torrez was tried separately from Gutierrez and Hernandez, who were each convicted of first degree murder with special-circumstance findings, robbery and conspiracy to commit robbery. (See *People v. Gutierrez* (Dec. 12, 2011, B225054) [nonpub. opn.]; *People v. Hernandez* (Feb. 17, 2011, B223310) [nonpub. opn.].)

cause of death was asphyxiation due to strangulation (by bedsheets).

The jury convicted Torrez of first degree felony murder[3] and found true the special-circumstance allegations of murder during the commission of robbery and burglary. The jury also found Torrez guilty of first degree robbery and conspiracy to commit robbery. Torrez was sentenced to life imprisonment without the possibility of parole with the sentences on the robbery and conspiracy counts stayed pursuant to section 654.

We affirmed the judgment, rejecting Torrez's sole argument on appeal that his sentence should be modified to an indeterminate term of 25 years to life because the felony-murder special-circumstance provision of section 190.2, subdivision (a)(17), violated the Eighth and Fourteenth Amendments. (*People v. Torrez* (Oct. 12, 2010, B218513) [nonpub. opn.].)

2. *Torrez's Petition for Resentencing*

On October 3, 2019 Torrez, representing himself, filed a petition for resentencing under former section 1170.95, checking boxes on the form petition establishing his eligibility for resentencing relief, including the boxes stating he had been convicted under the felony-murder rule and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill 1437.[4] At Torrez's

---

[3] The trial court instructed the jury Torrez was charged with first degree murder only under the felony-murder rule.

[4] Torrez's earlier petition for resentencing was withdrawn with permission from the court to refile it at a later date.

4

request the court appointed counsel to represent him during the resentencing process.[5]

The People filed an opposition to the petition, arguing Torrez was ineligible for resentencing because he was either the actual killer or a major participant in the underlying robbery and had acted with reckless indifference to human life. Torrez's counsel filed a reply, arguing there was no finding at trial that Torrez was the actual killer of Carrillo and contending the felony-murder special-circumstance findings, made prior to the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark)*, did not make Torrez ineligible for resentencing relief as a matter of law—a view recently adopted by the Supreme Court in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*) .

Following the submission of supplemental briefs, the court on February 10, 2021 ordered an evidentiary hearing on Torrez's petition for resentencing. A hearing on the merits was held on September 8, 2021. Torrez was present in the courtroom. At the outset of the hearing the court explained it had received input from counsel as to what its focus should be and stated it had reviewed the court of appeal opinion affirming Torrez's conviction, the briefs submitted to this court, and "portions of the trial transcript that dealt with the testimony of Erika Rodriguez, as well as the testimony of the paramedic who was the first responder and the coroner's testimony." Neither side presented any new evidence, instead arguing based primarily on Rodriguez's and the coroner's trial testimony whether Hernandez

---

[5] Because of the retirement of the judge who had presided at Torrez's trial and sentencing, Torrez's petition for resentencing was assigned to a different judge.

and Torrez had jointly killed Carrillo. The court took the matter under submission at the conclusion of the hearing.

On September 21, 2021 the court filed its order denying the petition. The court noted that Carrillo was still alive when Rodriguez left his motel room and had not yet been hogtied. "There was no testimony concerning who hogtied Carrillo or how the hogtying occurred. As such, there is no direct evidence that Defendant was the actual killer." Nonetheless, the court concluded, "the only reasonable conclusion that can be drawn from the circumstantial evidence is that Defendant and Hernandez jointly killed Carrillo. . . . The court agrees with the People's contention that the evidence demonstrates that subduing and hogtying Carrillo was a two-man job." Accordingly, the court found the People had proved beyond a reasonable doubt that Torrez was an actual killer of Carrillo and, as such, was not eligible for relief under former section 1170.95.

Torrez filed a timely notice of appeal.

## DISCUSSION

1. *Section 1172.6 (Former Section 1170.95)*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *Strong, supra*, 13 Cal.5th at pp. 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.) It also authorized, through former section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction

6

and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill 1437's changes to the definitions of the crime. (See *Strong*, at p. 708; *Lewis*, at p. 957; *Gentile*, at p. 843.) As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

When, as here, a petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*)

As originally enacted, former section 1170.95, subdivision (d)(3), provided, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." Senate Bill 775 amended former section 1170.95, subdivision (d)(3), to provide, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . .

A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

    2. *Torrez Has No Statutory or Constitutional Right To Have His Petition for Resentencing Treated as a Retrial for Murder*

Without questioning the standard of proof applied by the superior court, which issued its ruling prior to the enactment of Senate Bill 775, or challenging the sufficiency of the evidence to support the court's finding the People had proved beyond a reasonable doubt Torrez was an actual killer of Carrillo, Torrez contends in his appeal[6] that at the hearing to determine whether he was guilty of murder under amended sections 188 and 189, and thus entitled to resentencing relief under section 1172.6, he had a right to a jury trial and all related constitutional rights afforded criminal defendants. In making this argument Torrez contends, alternatively, the Legislature impliedly intended those protections be afforded petitioners when it enacted Senate

---

[6] Although Torrez did not request a jury trial or otherwise raise his constitutional claims in the superior court, he contends the issue has not been forfeited because it would have been futile to raise it prior to enactment of Senate Bill 775. In addition, he asserts, resolution of the issue involves a pure question of law based on undisputed facts that we may consider for the first time on appeal (see, e.g., *People v. Runyan* (2012) 54 Cal.4th 849, 859, fn. 3; *People v. Jimenez* (2021) 73 Cal.App.5th 862, 874), and doing so will obviate the need for a petition for writ of habeas corpus alleging ineffective assistance of counsel (see *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1322). The Attorney General does not argue forfeiture, addressing Torrez's claim on the merits. We do, as well.

Bill 775; it would violate petitioners' right to equal protection not to grant them the same constitutional rights as provided when adjudicating criminal misconduct in the first instance; or those rights are directly guaranteed by the Sixth and Fourteenth Amendments.[7]

Torrez's implied legislative intent argument is premised on the generally accepted principle that, when adopting legislation, "'the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them.'" (*People v. Slaughter* (1984) 35 Cal.3d 629, 640.) Thus, in *Slaughter* the Supreme Court held, when the Legislature enacted section 871.5 to provide a method for reviewing a magistrate's decision dismissing a criminal charge in addition to that already provided in section 739, but did not specify the standard of review for such a decision, it was

---

[7] Torrez reminds us the Supreme Court in *People v. Gentile, supra,* 10 Cal.5th 830, which held prior to the passage of Senate Bill 775 that the ameliorative provisions of Senate Bill 1437 did not apply to nonfinal judgments on direct appeal, declined to decide whether denial of a petition for resentencing under former section 1170.95 on the basis of facts not found by a jury "would run afoul of *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466]" because "Gentile has not filed a petition for resentencing under section 1170.95, nor do we have before us a section 1170.95 proceeding in which the trial court relied on facts not found by a jury to sustain an otherwise invalid conviction." (*Gentile,* at p. 857.) We are, of course, bound to follow Supreme Court precedent. (See, e.g., *Fujifilm Corp. v. Yang* (2014) 223 Cal.App.4th 326, 333.) The Court's statement it has "no occasion here to opine" on a question not properly before it, however, provides no guidance for our resolution of that issue.

appropriate to presume the Legislature did not intend to enact a new and different standard, but rather to incorporate the standard of review existing for dismissals under section 739. (*Slaughter*, at p. 640.)

Torrez emphasizes that Senate Bill 775 amended former section 1170.95, subdivision (d)(3), to allow at the hearing following issuance of an order to show cause only evidence "admissible under current law." Absent any contrary intent, Torrez argues, under the principle articulated in *People v. Slaughter*, *supra*, 35 Cal.3d 629, it must be presumed the Legislature with that amendment intended to incorporate all federal and state constitutional protections available to a criminal defendant, including the right to a unanimous jury determination of legal culpability beyond a reasonable doubt.

Not only does Torrez's argument require a massive linguistic and logical leap, but it also ignores section 1172.6, subdivision (d)(1), which provides, if the superior court issues an order to show cause after finding the petitioner made a prima facie showing of entitlement to relief, "the court" must hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner. Senate Bill 775 amended subdivision (d)(1) to include convictions for attempted murder and manslaughter within its scope, but did not otherwise change the language calling for a hearing before the court, not a jury trial.

Moreover, the existing case law we presume the Legislature knew when it enacted Senate Bill 775 uniformly rejected the argument a petitioner was entitled to a jury determination of his or her continued legal culpability for murder under amended sections 188 and 189. (E.g., *People v. James*

(2021) 63 Cal.App.5th 604, 609, and cases cited therein; see *People v. Howard* (2020) 50 Cal.App.5th 727, 740 [court order redesignating conviction as one for first degree burglary without a jury trial, following vacatur of murder conviction, did not violate petitioner's constitutional rights]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 [requiring defendant to utilize postjudgment procedure specified in former section 1170.95, which does not provide for a jury trial, was constitutional; the retroactive relief afforded by Senate Bill 1437 "is not subject to Sixth Amendment analysis"].) Given those decisions, the Legislature's silence on the point cannot reasonably be interpreted to incorporate previously rejected Sixth Amendment protections into the retroactive, postjudgment petitioning process.

Equally without merit is Torrez's equal protection argument, which begins with the conclusion that principles of fairness require that defendants previously convicted of murder have their continued culpability for murder under amended sections 188 and 189 decided under the same rules and procedures as utilized in trials of defendants currently charged under those provisions. But, as Torrez at least nominally recognizes, the first step in equal protection analysis is to determine whether the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Foster* (2019) 7 Cal.5th 1202, 1211-1212; *People v. Barrett* (2012) 54 Cal.4th 1081, 1107; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) It simply defies credulity to assert defendants standing trial for murder in the first instance and individuals properly convicted of murder under then-existing law, like Torrez, who are now seeking retroactive relief pursuant

11

to Senate Bills 1437 and 775, must be considered similarly situated. (See *People v. Floyd* (2003) 31 Cal.4th 179, 191 ["'[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time'"]; cf. *People v. Mancilla* (2021) 67 Cal.App.5th 854, 869-870 [individuals convicted of murder under the natural and probable consequences doctrine and those convicted of provocative act murder are not similarly situated for purposes of resentencing relief under Senate Bill 1437]; see also *Strong*, *supra*, 13 Cal.5th at p. 718 [petitioners seeking resentencing under section 1172.6 with pre-*Banks*/*Clark* felony-murder special-circumstance findings and those with post-*Banks/Clark* findings are not similarly situated; "[o]ne [group] has been determined, beyond a reasonable doubt, to have acted as a major participant with reckless indifference to human life as those terms are now understood under *Banks* and *Clark*, and the other has never been the subject of such a determination"].)

Torrez's claim of an equal protection violation fails at the threshold without any need to address the Legislature's valid reasons for treating differently individuals previously convicted of murder seeking resentencing and those first facing trial for the crime.

Torrez's final argument—that the Sixth and Fourteenth Amendments, as interpreted in *Apprendi v. New Jersey* (2000) 530 U.S. 466 and subsequent case law, require a unanimous jury verdict for the redetermination of a previously convicted petitioner's responsibility for murder under amended sections 188 and 189—has been rejected by every court of appeal that has addressed the issue. (E.g., *People v. Basler* (2022) 80 Cal.App.5th 46, 61-62 [decided after the effective date of

12

Senate Bill 775]; *People v. James*, *supra*, 63 Cal.App.5th at p. 609.) Those cases hold the opportunity for a hearing to determine whether a valid conviction for murder under the natural and probable consequences doctrine or the felony-murder rule should be vacated in light of Senate Bill 1437's amendments to sections 188 and 189 is an act of lenity that does not implicate the Sixth Amendment, including the right to a jury trial. (See *James*, at p. 609 ["[n]o constitutional provision required the Legislature to authorize relief under the conditions specified in section 1170.95 and none compels it to make the conditions subject to jury determination"].)

Torrez urges us to reject this analysis, arguing reliance by courts considering the right to a jury trial under former section 1170.95 mistakenly relied on the Supreme Court's act-of-lenity language in *People v. Perez* (2018) 4 Cal.5th 1055. In *Perez* the Supreme Court held the trial court may make factual findings based on new evidence regarding a petitioner's eligibility for resentencing under Proposition 36, the Three Strikes Reform Act of 2012, without a jury because retroactive application of the benefits from the proposition was a legislative act of lenity that did not implicate Sixth Amendment rights. (*Perez*, at pp. 1063-1064.)[8] Discretionary postconviction resentencing decisions under Proposition 36, Torrez asserts, are fundamentally different from adjudication of continued culpability for murder under amended sections 188 and 189. Yet, other than noting

---

[8]     The courts of appeal have similarly held there is no right to a jury trial in postconviction resentencing proceedings under Proposition 47, The Safe Neighborhood and Schools Act, a similar act of lenity by the Legislature. (See, e.g., *People v. Jefferson* (2016) 1 Cal.App.5th 235, 241.)

resentencing under Proposition 36 generally involves factors personal to the petitioner, he fails to explain why.

Under the constitutional principle established in *Apprendi v. New Jersey*, *supra*, 530 U.S. at page 490, other than the fact of a prior conviction, facts that increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. A proceeding under section 1172.6, however, cannot result in an increased sentence; it permits only downward sentencing adjustments. (Cf. *Dillon v. United States* (2010) 560 U.S. 817, 828 [rejecting Sixth Amendment right to a jury in resentencing proceedings based on downward modification of applicable sentencing guidelines].)

Moreover, as the Attorney General points out, petitioners seeking relief under Senate Bills 1437 and 775 are not alleging error occurred at their trials, nor are they requesting (or will they be entitled to) a plenary resentencing hearing. (Cf. *People v. Burhop* (2021) 65 Cal.App.5th 808, 815 ["[u]ntil a section 1170.95 petition is filed and adjudicated, with due process afforded to the People to contest the merits of the petition [citation], the petitioner's existing judgment of conviction and sentence remains presumptively authorized and unaffected by Senate Bill 1437"].) By making the amendments to sections 188 and 189 retroactive, the Legislature has simply provided an opportunity for certain individuals convicted as accomplices under then-valid theories of imputed malice to be resentenced. But those individuals must initiate the process (by filing a valid petition and establishing a prima facie entitlement to relief). And to reiterate, the only possible outcomes of such a proceeding are the prior valid judgment of conviction and sentence will remain unchanged or

14

the sentence will be reduced.  It is hard to imagine a clearer act of legislative leniency.  As such, we agree with all of our colleagues who have held the section 1172.6 resentencing process does not implicate the Sixth Amendment.

## DISPOSITION

The postjudgment order denying Torrez's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

15