Filed 4/7/23  P. v. Alvarez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PABLO ALVAREZ,[1]<br><br>    Defendant and Appellant. | D080350<br><br><br><br>(Super. Ct. No. SCS311465) |

APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz, Enrique Camarena, Garry G. Haehnle, Dwayne K. Moring, Sharon Majors-Lewis, Timothy R. Walsh, Jeffrey F. Fraser, Judges. Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

---

[1]    Various portions of the record identified defendant as having the surname "Alverez" and "Alvarez."  Defendant's trial counsel indicated that the correct spelling is "Alvarez."

A jury found Alvarez guilty of assaulting Margaret P. with intent to commit a specific felony (count 4, Pen. Code,[2] § 220, subd. (a)(1)) but was unable to reach a unanimous verdict as to any of the remaining counts. The court declared a mistrial as to the remaining charges. Alvarez later pleaded guilty to two charges added to the information: assaulting Beatriz A. with force likely to cause great bodily injury (count 7, § 245, subd. (a)(4)) and misdemeanor sexual battery of Beatriz (count 8, § 243.4, subd. (e)(1)).

Alvarez's counsel on appeal has filed an opening brief asking this court to conduct an independent review of the record pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*) and *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We granted Alvarez the opportunity to file a supplemental brief on his own behalf and he has done so. We have reviewed the briefing submitted by counsel and by Alvarez and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, Margaret met Alvarez and they decided to smoke methamphetamine together. When Margaret told him that she did not have a place to stay the night, he invited her to his boat that was anchored near Coronado. After she and Alvarez got in a kayak or canoe to go to Alvarez's boat, he started dropping "sexual hints." Margaret then began texting her boyfriend.

Alvarez took Margaret's cell phone and told her that he wanted to have sex. He had Margaret lay down next to him and tried to penetrate her vagina with his finger as she told him no. He put his finger between her labia majora about ten times. He later touched her breasts and then put his fingers between her butt cheeks to touch her anus. She left the following morning and called her boyfriend.

---

[2] Undesignated statutory references are to the Penal Code.

2

Margaret underwent a sexual assault response team (SART) examination by a forensic nurse examiner. Margaret told the nurse that Alvarez had attempted to penetrate her but could not because "she squeezed her legs together." A police detective had Margaret make a pretext call to Alvarez to attempt to illicit an admission from him. Margaret made the call from the hospital and the prosecution played a recording of the call for the jury. During the pretext call, Alvarez admitted that he tried to "finger" Margaret but could not because she kept her legs closed. He apologized for touching her anywhere.

In October 2019, Beatriz met Alvarez at the trolley stop in San Ysidro where he offered to help her with transportation. Beatriz ended up going with Alvarez to his boat moored in San Diego Bay. While on the boat, Alvarez took off Beatriz's clothes while she told him no. He put his mouth on her vagina and forced her to have sexual intercourse with him. Alvarez grabbed her hair and put his penis in her mouth. Eventually, Beatriz was able to put her clothes on, jump into the water and swim to shore where she found a police officer and asked for help.

On October 25, 2019, a three-count felony complaint was filed charging Alvarez with forcible rape of Beatriz (count 1, § 261, subd. (a)(2)), and two counts of forcible oral copulation (counts 2 & 3, § 287, subd. (c)(2)(A)). On November 20, 2019, the complaint was amended to include three additional charges related to Margaret: assault with intent to commit a forcible sexual penetration under section 289 (count 4; § 220, subd. (a)(1)); attempted sexual penetration with use of force (count 5; §§ 664, 289, subd. (a)); and false imprisonment by violence, menace, fraud, or deceit (count 6; §§ 236, 237, subd. (a)).

3

Margaret testified at the December 5, 2019, preliminary hearing. The court bound Alvarez over on all charges and the amended complaint was deemed the information. The information, containing the same charges, was refiled on September 22, 2021. The trial court held a *Marsden*[3] hearing on January 24, 2020, and denied Alvarez's request for new appointed counsel. The matter was later transferred to another public defender. In March 2020, the new public defender attempted to schedule another *Marsden* hearing but was not able to do so because of court closures due to the COVID-19 pandemic. In February, March, and April, acting in propria persona, Alvarez filed a total of three requests to dismiss the case claiming, among other things, the violation of his right to a speedy trial. The court took no action on these filings because Alvarez was represented by counsel.

In May 2020, the court held another *Marsden* hearing and denied Alvarez's request for new appointed counsel. At the conclusion of the *Marsden* hearing, Alvarez requested to represent himself. The court continued the matter to see if Alvarez could resolve his issue with counsel. On May 19, 2020, Alvarez waived his *Faretta/Lopez* rights to counsel and began representing himself. (See *Faretta v. California* (1975) 422 U.S. 806; *People v. Lopez* (1977) 71 Cal.App.3d 568.) Between June 2020 and November 2020, Alvarez filed six motions to dismiss, which the trial court denied. As we detail in the Discussion, part E, the trial court found good cause to continue Alvarez's trial based on the COVID-19 pandemic and to resolve motions filed by Alvarez.

The matter proceeded to trial in September 2021. During pretrial in limine motions, the prosecution notified the trial court that Margaret had passed away. The court granted the prosecution's unopposed request to

---

3    *People v. Marsden* (1970) 2 Cal.3d 118.

4

admit Margaret's preliminary hearing testimony with the parties agreeing to redact part of her testimony. The jury rendered its verdict on October 8, 2021. It found Alvarez guilty of assaulting Margaret with the intent to commit a felony as charged in count 4. The trial court declared a mistrial when the jury could not reach a verdict on the remaining counts. After the prosecution indicated its intent to retry the hung counts, Alvarez pleaded guilty to two charges added to the information: assaulting Beatriz with force likely to cause great bodily injury (count 7) and misdemeanor sexual battery of Beatriz (count 8). The plea agreement stated that Alvarez waived his right to appeal the jury verdict as to count 4 and the convictions by plea. Upon the People's motion, the court dismissed the remaining counts.

In December 2021, Alvarez submitted a letter to the court stating he wanted to represent himself, withdraw his plea, and did not want to waive his right to appeal his conviction on count 4. The court held a further *Marsden* hearing, denied Alvarez's request to replace appointed counsel, but appointed independent counsel to investigate and file a motion to withdraw the plea if appropriate. In March 2022, independent counsel informed the court that he found no ground upon which to file a motion to withdraw the plea and that Alvarez was no longer requesting to withdraw his plea.

The court sentenced Alvarez to the middle term of four years on count 4 with a concurrent middle term of three years on count 7 and a concurrent 180 days for count 8. Alvarez filed a handwritten notice of appeal. Counsel later filed an amended notice of appeal indicating the appeal was from a guilty plea and was based on the sentence or other matters occurring after the plea. Counsel did not request a certificate of probable cause.

5

## DISCUSSION

Appointed appellate counsel filed a brief summarizing the facts and proceedings below. She presented no argument for reversal but asked this court to review the record for error as mandated by *Wende, supra*, 25 Cal.3d 436. Counsel raised no specific issues on appeal and instead, identified six possible, but not arguable, issues pursuant to *Anders, supra*, 386 U.S. 738 that Alvarez asked her to raise, as follows, whether: (1) the trial court erred by denying Alvarez's request to withdraw his guilty plea; (2) Alvarez's right to speedy trial and speedy preliminary hearing were violated such that he was denied due process and the ability to present an effective defense; (3) counsel provided ineffective assistance in failing at the preliminary hearing to effectively cross-examine Margaret who died prior to trial and thus was an unavailable witness, whose transcript was admitted in evidence at trial; (4) the trial court erred in excluding the exculpatory statement of Margaret's boyfriend; (5) the trial court erred in instructing the jury on the elements of the section 220 offense; and (6) substantial evidence supported Alvarez's conviction for violating section 220.

We granted Alvarez permission to file a brief on his own behalf. Alvarez filed a 26-page handwritten brief expanding on three potential issues raised by appellate counsel: (1) violation of his rights to a speedy trial and speedy preliminary hearing; (2) ineffective assistance of counsel at the preliminary hearing; and (3) sufficiency of the evidence supporting his conviction for assaulting Margaret. Finally, he claims a violation of his constitutional right to due process based on (a) the prosecutor's failure to comply with a court order to produce discovery, and (b) prosecutorial error by withholding evidence and soliciting false testimony during the preliminary examination.

6

When the appellant raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and if they fail, explain why. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.) Below we address the issues identified by appellate counsel and Alvarez in chronological order. As we will explain, the issues identified by counsel and Alvarez lack arguable merit.

A.   Right to Speedy Preliminary Examination.

The preliminary hearing "shall be held within 10 court days" of the arraignment. (§ 859b.) If the defendant is in custody, the charges must be dismissed if the hearing does not occur within that time, unless an exception applies. (*Ibid.*) The ten-day deadline has two exceptions. The defendant may "personally waive[ ]" his right to an examination within ten court days. (*Id.*, subd. (a).) Alternatively, the prosecution may "establish[ ] good cause" for a continuance beyond that period. (*Id.*, subd. (b).)[4]

However, the "denial of a defendant's right to trial within a prescribed statutory time period falls within this class of irregularities that are not jurisdictional in the fundamental sense and which, therefore, require a showing of prejudice." (*People v. Clark* (2016) 63 Cal.4th 522, 552 [addressing violation of the 60-day rule in section 859b].) " 'Upon appellate review following conviction, . . . a defendant who seeks to predicate reversal of a conviction upon denial of his right to speedy trial must show that the delay caused prejudice: this court, in reviewing the judgment of conviction, must "weigh the effect of the delay in bringing defendant to trial or the fairness of the subsequent trial itself." ' " (*People v. Lomax* (2010) 49 Cal.4th

_____

4     Section 859b also contains a second deadline of 60 days from the date of arraignment to hold the preliminary hearing. (§ 859b.)

7

530, 557; *People v. Wilson* (1963) 60 Cal.2d 139, 149 [proper remedy for enforcing speedy trial rights is petition for writ of mandate prior to trial].)

Alvarez was arrested on October 23, 2019 and arraigned on October 25, 2019. At a readiness conference on November 4, 2019, the court found good cause to continue the initial preliminary hearing date of November 7, 2019, for nine court days, on request of defense counsel, over Alvarez's objection. On November 20, 2019, the prosecutor filed an amended complaint adding the charges related to Margaret. The trial court held the preliminary hearing on December 5, 2019. At the conclusion of the preliminary hearing, Alvarez was arraigned on the amended complaint and pled not guilty. Although the trial court held the preliminary hearing more than ten days after Alvarez's first arraignment, Alvarez does not explain how he was prejudiced by the delay in holding the preliminary hearing. (Cal. Const., art. VI, § 13 [Defendant is not entitled to have judgment set aside absent a showing "that the error complained of has resulted in a miscarriage of justice"].) This issue lacks arguable merit.

B. Due Process Violations

1. Alleged *Brady* Violations

Alvarez claims a violation of his constitutional right to due process under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) based on the prosecutor's failure to comply with a court order to produce discovery. He asserts that at the time of trial, four items of discovery ordered by the court remained outstanding: (1) on May 10, 2021, the prosecutor was ordered to produce all text messages from July 17 to 19, 2019; (2) ambulance and paramedic reports from October 23, 2019, related to Beatriz; (3) "[f]ederal investigation reporting the dates San Diego Harbor Police vehicle dash cameras and [b]ody cameras were non-operational"; and (4) police reports

8

related to Margaret and a child abuse case where Margaret was the aggressor.

Under the federal constitution, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady, supra*, 373 U.S. at p. 87.) "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (*Strickler v. Greene* (1999) 527 U.S. 263, 281–282.) To establish the prejudice element of a *Brady* violation, the defendant must show " 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." (*Strickler v. Greene*, at p. 289.)

### a. Text Messages

During discussion of the in limine motions, defense counsel sought to introduce Margaret's text messages to her boyfriend, not for the truth of whether she had sexual contact with Alvarez, but to show she was deceptive in describing the incident to her boyfriend, with the deception relevant to her credibility. Defense counsel also argued that the text messages might be admissible as prior inconsistent statements. The trial court concluded that the text messages were admissible. At trial, a detective was shown an exhibit containing the text messages between Margaret and her boyfriend throughout the incident and the parties questioned him about the messages. Both counsel also referenced the text messages during closing argument.

Whether a *Brady* violation exists as to the text messages lacks arguable merit because the defense had the text messages before the preliminary hearing and later presented this evidence to the jury.

      b.   Medical Reports Related to Beatriz

Alvarez claims a *Brady* violation pertaining to ambulance and paramedic reports connected to Beatriz's incident on October 23, 2019. Alvarez pled guilty to two counts related to Beatriz after the trial court recited the factual basis for these counts. As addressed below in part F, this issue lacks arguable merit because Alvarez waived his right to appeal his convictions by plea.

      c.   Non-Operational Dash and Body Cameras

Alvarez claims a *Brady* violation related to a "[f]ederal investigation reporting the dates San Diego Harbor Police vehicle dash cameras and [b]ody cameras were non-operational." During pretrial discussions, the prosecutor stated she provided Alvarez with "body-worn camera [video] of" Beatriz. The prosecutor also stated that dash and body camera footage of Margaret did not exist. She later clarified that dash cameras on Harbor Police vehicles were not functional because of a "hacking incident" that occurred months prior to both incidents. Whether a *Brady* violation exists as to dash and body camera video lacks arguable merit because Alvarez has not shown that such dash and body camera video exists.

      d.   Police Reports Related to Margaret

Alvarez claims a *Brady* violation regarding police reports related to Margaret and a child abuse case where Margaret was the aggressor. Alvarez, however, failed to cite us to any portion of the record showing he requested these materials and failed to receive them. Even assuming the prosecution suppressed this information, Alvarez has not shown how this information

10

might have changed the outcome of trial. (*People v. Salazar* (2005) 35 Cal.4th 1031, 1043 [" 'there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict' "].) This issue lacks arguable merit.

C.   Alleged Prosecutorial Misconduct

Alvarez claims a violation of his constitutional right to due process based on the prosecutor soliciting false testimony during the preliminary examination that she failed to correct. He claims that at the preliminary hearing, Margaret testified contrary to a prior telephone interview conducted with a detective on November 8, 2019, and contrary to her statements during her SART examination. Specifically, at the preliminary hearing, Margaret testified that Alvarez put his finger between her labia majora about ten times and put his fingers between her butt cheeks to touch her anus. In contrast, during her November interview, she claimed Alvarez did not put his fingers between her labia majora and did not put his hands down her pants. During her SART examination, Margaret stated that Alvarez did not penetrate her vagina with his fingers.

"A prosecutor's presentation of knowingly false testimony [citation], or the failure to correct such testimony after it has been elicited [citation], violates a defendant's right to due process of law under the United States Constitution." (*People v. Vines* (2011) 51 Cal.4th 830, 873 (*Vines*), overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 104.) "Mere inconsistencies between a witness's testimony and her prior statements do not prove the falsity of the testimony." (*Vines, supra*, 51 Cal.4th at p. 874.) " 'False evidence is "substantially material or probative" if it is "of such significance that it may have affected the outcome," in the sense that "with

11

reasonable probability it could have affected the outcome . . . ." ' " (*In re Malone* (1996) 12 Cal.4th 935, 965–966, italics omitted.)

This issue lacks arguable merit because Alvarez has not shown Margaret gave false testimony at the preliminary hearing. First, Margaret's statement during her SART examination that Alvarez did not penetrate her vagina with his fingers is not inconsistent with her statement at the preliminary hearing that Alvarez put his finger between her labia majora because the SART nurse defined "penetration" as entering the vaginal canal which is different from the outer parts of the vagina. Second, Alvarez does not cite where in the record we can locate the transcript of Margaret's November 2019 telephone interview and we have not located this transcript in the record. Even assuming Margaret stated during her November interview that Alvarez did not put his fingers between her labia majora, this would constitute an inconsistency that does not prove the falsity of Margaret's preliminary hearing testimony. (*Vines, supra*, 51 Cal.4th at p. 874.) Finally, Alvarez's statements during the pretext call with Margaret established his guilt on count 4. Thus, even assuming the prosecutor somehow committed misconduct, the assumed error was harmless beyond a reasonable doubt. (See *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 854 [relief under state law requires the defendant show " 'that the challenged conduct raised a reasonable likelihood of a more favorable verdict' " and relief is not available under federal law if " 'the challenged conduct was . . . harmless beyond a reasonable doubt' "])

D. Ineffective Assistance of Counsel at Preliminary Hearing

Alvarez claims he received ineffective assistance of counsel at the preliminary hearing because he notified his counsel of exculpatory evidence in the form of text messages between Margaret and her boyfriend but counsel

12

failed to introduce these messages at the preliminary hearing. In the text messages to her boyfriend, Margaret stated, among other things that " 'nothing happened' " and she did not have sex, kiss, or touch Alvarez. He claims that counsel's failure to effectively cross-examine Margaret at the preliminary hearing denied him a fair trial because this evidence would have exonerated him but was not admitted at trial for the " '[t]ruth of the [m]atter.' "

Our review of the record shows that the parties discussed the admissibility of the text messages at trial and the possible ineffective assistance of defense counsel given that defense counsel had the text messages at the time of the preliminary hearing but did not cross-examine Margaret regarding them. Defense counsel argued that the text messages would not be offered at trial for the truth of the matter asserted but to attack Margaret's credibility. The trial court ruled that it would be "fundamentally unfair" to keep the statements out. At trial, the parties stipulated regarding the foundation for the text messages and a detective testified regarding the text messages, including the statements that "nothing happened" and she did not have sex, kiss, or touch Alvarez.

" '[T]o demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his [or her] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he [or she] must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*In re Harris* (1993) 5 Cal.4th 813, 832–833

13

(*Harris*), disapproved on another point in *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 854–855, fn. 5; *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

This issue lacks arguable merit because Alvarez cannot demonstrate prejudice. The purpose of the preliminary hearing is to establish whether probable cause exists to believe the defendant has committed a felony. (§§ 866, subd. (b).) The magistrate is to decide if there is " ' "some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." ' " (*People v. Slaughter* (1984) 35 Cal.3d 629, 637.) "If the record shows strong and credible evidence of defendant's guilt, the magistrate may reasonably assume the possibility of his guilt. Thus in many cases [the magistrate] will not find it necessary to resolve all conflicts in the evidence, in order to find probable cause to hold the defendant for trial." (*Ibid.*)

Here, Margaret's testimony at the preliminary hearing constituted credible evidence of Alvarez's guilt. Defense counsel's failure to ask Margaret about the text messages would not have changed the outcome of the preliminary hearing. Additionally, the failure to present the text messages at the preliminary hearing did not prejudice Alvarez at trial because the jury considered the text messages before rendering its verdict. Alvarez's claim that defense counsel's failure to present the text messages at the preliminary hearing prevented defense counsel from admitting them at trial for the " 'truth of the matter' " is mistaken. Admission of the text messages at the preliminary hearing would not have changed the hearsay nature of this evidence and its inadmissibility for the truth of the matter asserted.[5]

---

[5] " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove

Alvarez next claims ineffective assistance based on defense counsel's decision to proceed with the preliminary hearing without toxicology results, DNA reports, and the SART examination reports. This issue lacks arguable merit because Alvarez cannot demonstrate prejudice. Namely, that he would have obtained a more favorable result at the preliminary hearing had this evidence been presented. (*Harris, supra*, 5 Cal.4th at pp. 832–833.)

E. Right to Speedy Trial.

1. State Statutory Right

In relevant part, section 1382, subdivision (a)(2), provides that "[i]n a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an . . . information," "[t]he court, unless good cause to the contrary is shown, shall order the action to be dismissed . . . ." (§ 1382, subd. (a)(2).) We review a trial court's good-cause determination for an abuse of discretion. (*People v. Sutton* (2010) 48 Cal.4th 533, 546.) "Discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*In re Lawanda L.* (1986) 178 Cal.App.3d 423, 428.)

"A waiver of statutory speedy trial rights occurs when defense counsel consents to or requests a delay in the proceedings. Consent may be express or implied (§ 1382(a)(2)(B) & (3)(B)), and is inferred from silence. '[F]ailure of defendant or his counsel to make timely objection to a postponement constitutes implied consent to the postponement.' " (*Barsamyan v. Appellate Division of Superior Court* (2008) 44 Cal.4th 960, 969.) "Defense counsel, as part of his or her control of the procedural aspects of a trial, ordinarily has authority to waive the statutory speedy trial rights of his or her client, even

the truth of the matter stated. [¶] . . . Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subds. (a), (b).)

15

over the client's objection, as long as counsel is acting competently in the client's best interest.  [Citations.]  This is because statutory speedy trial rights are not among those rights that are considered so fundamental that they are 'beyond counsel's primary control.' " (*Ibid.*)

2.  Analysis

The trial court arraigned Alvarez after the December 5, 2019, preliminary hearing and scheduled trial for January 24, 2020.  At that time, the section 1382 statutory deadline for trial was February 3, 2020.

On January 24, 2020, Alvarez's counsel moved to continue the trial because she needed to consult with an expert regarding the DNA results and the People had not yet received the toxicology laboratory results for both victims.  The People did not oppose the motion and Alvarez did not waive time.  The trial court found good cause to continue the trial, over Alvarez's objection, to April 22, 2020.

However, "[i]n early March 2020, the Governor of California declared a state of emergency in California, and the President declared a national emergency due to the COVID-19 pandemic.  Based on health recommendations, the Chief Justice of the State of California issued statewide emergency orders suspending in-person jury trials and, among other things, extending statutory deadlines for trials in criminal proceedings." (*Elias v. Superior Court* (2022) 78 Cal.App.5th 926, 931 (*Elias*).)  Specifically, on March 23, 2020, by order of the Honorable Chief Justice of California Tani G. Cantil-Sakauye, all jury trials were suspended and extended for a period of 60 days from the date of the order.  (California Courts Newsroom, COVID-19 News Center, Court Emergency Orders, <https://newsroom.courts.ca.gov/covid-19-news-center/court-emergency-orders> [as of Apr. 7, 2023], archived at <https://perma.cc/XG33-U6LC>.)

16

On March 30, 2020, the Chief Justice, as Chair of the Judicial Council, issued a statewide order finding good cause to "[a]uthorize superior courts to issue implementation orders that: . . . Extend the time period provided in section 1382 of the Penal Code for the holding of a criminal trial by no more than 60 days from the last date on which the statutory deadline otherwise would have expired." (*Ibid*.) On April 29, 2020, the Chief Justice ordered an additional 30-day extension, bringing extensions of time to hold criminal trials during the pandemic to a total of 90 days. (*Ibid*.)

On May 13, 2020, pursuant to the Chief Justice's orders, the trial court continued Alvarez's April 22, 2020, trial date to July 21, 2020. On May 19, 2020, Alvarez sought to represent himself and the trial court rescheduled trial for July 24, 2020. On July 13, 2020, the trial court heard and denied Alvarez's three motions to dismiss. The court found that all continuance requests were made by the defense and good cause was found for all continuances.

Pursuant to the Chief Justice's authorization, the Presiding Judge of the San Diego Superior Court issued a series of orders extending the time provided in section 1382 for the holding of criminal trials in 30 day increments. (*Elias, supra,* 78 Cal.App.5th at p. 931.)[6] Pursuant to this series

---

[6] On our own motion, we take judicial notice of the general orders of the presiding department of the San Diego County Superior Court which extended the deadline to hold criminal trials due to the pandemic during the timeframe when Alvarez's trial was delayed. (Super. Ct. San Diego County, Gen. Order Nos. 040320-39 (April 3, 2020), 043020-47 (April 30, 2020, granting 90 day extension), 061220-63 (June 12, 2020), 070120-71 (July 1, 2020), 081020-82 (Aug. 10, 2020), 090820-87 (Sept. 8, 2020), 100720-95 (Oct.7, 2020), 110520-101 (Nov. 5, 2020), 120820-109 (Dec. 8, 2020), 010121-48 (Dec. 31, 2020), 010821-52 (Jan. 8, 2021), 020321-56 (Feb. 3, 2021), 031021-60 (Mar. 10, 2021), 040821-65 (Apr. 8, 2021), 050621-69 (May 6,

of orders, the trial court issued a series of orders continuing Alvarez's trial date for four months. At the continuance issued in October 2020, the trial court decided to bring the matter back every month and set the matter for jury trial on November 30, 2020. The court explained to Alvarez, that many people were in the same "situation because of the COVID and the implication that it is having on speedy trial rights for everybody. It is a very difficult situation."

At the trial call on December 1, 2020, the court found good cause to set trial beyond limits due to several motions filed by Alvarez. The court later denied Alvarez's motions and set trial for January 26, 2021.[7] At the trial call on January 26, the court continued trial to February 25 explaining, "[W]e are not having any trials coming into the courthouse at this time because of the COVID pandemic and the safety issues." Alvarez then filed a *Brady* motion, which the trial court heard on the February 25 trial date. After Alvarez waived 30 days, the court trial set for March 29. On March 29, the parties stipulated to release of Harbor Police records, the court vacated the trial date, and set trial for April 26. On April 26, the court heard Alvarez's *Pitchess*[8] motion, granted the motion in part, set an in camera hearing for April 28, and found good cause to continue trial to May 26.

On May 10, at Alvarez's request, the court revoked his pro per status and appointed counsel for trial. At a hearing on June 16, Alvarez's public defender indicated he "could be prepared to go" on the July 6 trial date. The

2021), 060721-73 (June 7, 2021), 070821-78 (July 8, 2021), 080621-82 (Aug. 6, 2021), 090221-85 (Sept. 2, 2021).)

[7]     All undesignated date references are to 2021.

[8]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 536–538.

18

People, however, requested a continuance until September due to witness unavailability. Citing the COVID-19 emergency orders, the trial court found good cause to continue the trial to September 13, over Alvarez's objection. On September 13, the trial court granted a continuance to September 21, and the matter was assigned to a trial department on that date. The matter trailed for one day, with the court hearing in limine motions on September 22.

This history shows that Alvarez's trial continuances were based on the COVID-19 emergency, subsequent orders of the Chief Justice of California and the Presiding Judge of the San Diego Superior Court, and findings of good cause made by the trial court. Alvarez has not shown how the trial court abused its discretion in granting the trial continuances and we conclude that his speedy trial claim lacks arguable merit.

F.  Trial Issues

The jury found Alvarez guilty of assaulting Margaret as charged in count 4 but could not reach a verdict on the remaining counts. The trial court declared a mistrial for all remaining counts. After the prosecution indicated its intent to retry the hung counts, Alvarez pleaded guilty to two charges added to the information related to Beatriz.

The plea agreement stated that Alvarez waived his right to appeal the jury verdict as to count 4 and the convictions by plea.[9] A defendant may waive the right to appeal as part of a plea agreement. (*People v. Panizzon* (1996) 13 Cal.4th 68, 80 (*Panizzon*).) Alvarez received the benefit of his plea agreement, in that the remaining charges against him were dismissed. Based on these facts, the four issues identified by counsel and Alvarez related to his jury trial on count 4 lack arguable merit.

---

[9]     As we address in part G, there are no arguable issues regarding the validity of Alvarez's plea agreement.

19

G.   Request to Withdraw Guilty Plea

In December 2021, Alvarez submitted a letter to the court stating he wanted to represent himself, withdraw his plea, and did not want to waive his right to appeal his conviction on count 4.  The court held a further *Marsden* hearing, denied Alvarez's request to replace appointed counsel, but appointed independent counsel to investigate and file a motion to withdraw the plea if appropriate.  In March 2022, independent counsel informed the court that he found no ground upon which to file a motion to withdraw the plea and that Alvarez was no longer requesting to withdraw his plea.

Appellate counsel suggests that the trial court erred by denying Alvarez's motion to withdraw his guilty plea.  We conclude this claim lacks arguable merit because it is foreclosed by the absence of a certificate of probable cause.  (*People v. Johnson* (2009) 47 Cal.4th 668, 679 [defendant must obtain a certificate of probable cause to challenge on appeal the denial of a motion to withdraw a guilty plea; *Panizzon, supra*, 13 Cal.4th at p. 76 [in the absence of a certificate of probable cause, any issues pertaining to the validity of the plea are not cognizable on appeal].)

H.   Summary

Review of the record pursuant to *Wende, supra*, 25 Cal.3d 436, and *Anders, supra*, 386 U.S. 738, including the possible issues referred to by Alvarez and his appellate counsel, have disclosed no reasonably arguable appellate issues.  We find that Alvarez was adequately represented both at trial and on appeal.

20

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

BUCHANAN, J.